The AKRO CORPORATION,
Plaintiff–Appellant,

v.

Ken LUKER, Defendant–Appellee.

No. 94–1229.

United States Court of Appeals,
Federal Circuit.

Jan. 20, 1995.

James D. Myers, Bell, Seltzer, Park & Gibson, P.A., Charlotte, NC, argued for plaintiff-appellant. With him on the brief were Dickson M. Lupo and George M. Taulbee.

Bruce H. Wilson, Oldham, Oldham & Wilson Co., L.P.A., Akron, OH, argued for defendant-appellee. With him on the brief were Mark A. Watkins and Kenneth A. Godlewski.

Before MICHEL, Circuit Judge, BENNETT, Senior Circuit Judge, and RADER, Circuit Judge.

MICHEL, Circuit Judge.

Akro Corporation (Akro) appeals from the February 9, 1994 judgment of the U.S. District Court for the Northern District of Ohio, No. 5:93CV2207, dismissing Akro's action for declaratory judgments of noninfringement, invalidity, and unenforceability. The trial court entered judgment pursuant to Federal Rule of Civil Procedure 12(b)(2), dismissing Akro's action for want of personal jurisdiction over Ken Luker (Luker), the defendant patentee. Because the trial court erred in concluding that its exercising personal jurisdiction over Luker would transgress the boundary Fifth Amendment due process circumscribes for such exercise, we reverse and remand.

### BACKGROUND

Akro, the plaintiff accused infringer, is an Ohio corporation with facilities for manufacturing floor mat carpets in both Canton and Holmesville, Ohio. Luker, the defendant patentee, is an individual who resides in and conducts business from Orange County, California. He is the named inventor and owner of U.S. Patent No. 4,871,602 (the '602 patent), directed to a vehicle floor mat having a high density, long wearing band formed integrally with the remainder of the mat. Luker has never been in Ohio, and no one is or has ever been his agent or personal representative in Ohio.

Luker, through his counsel, sent Akro a warning letter, dated October 4, 1990, which contained the following:

It is my understanding that you are aware of the patent held by Mr. Luker and are intentionally manufacturing and selling floor mats using said patent in full disregard of Mr. Luker's patent rights.

Please be advised that our office is investigating this matter and will seek remedies for our client should there be a patent infringement. Such remedies would include injunctive relief, compensatory damages and attorneys' fees.

Akro referred this letter to its patent counsel, located in North Carolina.

Akro and Luker, through their respective counsel, attempted to negotiate a settlement to their dispute. The negotiations lasted almost three years but eventually reached an impasse. During the period from February 6, 1991 to October 13, 1993, while the negotiations proceeded, Luker's counsel reiterated the accusations of infringement and the threats of litigation in six separate warning letters to Akro's counsel.

The warning letters also make it clear that Luker had entered into an exclusive license

agreement with Pretty Products, an Ohio corporation that manufactures floor mat carpets and is one of Akro's competitors in the marketplace in Ohio. Though the text of the license agreement is not of record in this case, Luker's letters to Akro are, and they contain clear statements as to four of the agreement's features: (1) the agreement became effective on March 17, 1992; (2) Pretty Products is licensed to practice the '602 patent; (3) Luker "has obligations under the [agreement] to defend and pursue any infringement against his patent occurring from the date of the [agreement] and thereafter;" and (4) Pretty Products is empowered to sue on Luker's behalf those parties that infringe the '602 patent.

The last of Luker's warning letters, dated October 13, 1993 and faxed to Akro's counsel that same day, contained the following:

> Mr. Luker believes that he has accepted an extremely low settlement amount in an effort to resolve this matter. We believe that this resolution has been prolonged unnecessarily and must be completed by Friday, October 15, 1993.

> If the matter cannot be resolved timely, then Mr. Luker has decided to proceed with an infringement action for both the time period which he solely held the patent rights, as well as for the time period held by his exclusive licensee.

Akro filed its declaratory judgment action against Luker two days later in the U.S. District Court for the Northern District of Ohio.

Luker did not answer the allegations in Akro's complaint. Instead, on January 14, 1994, Luker filed a Rule 12(b)(2) motion to dismiss Akro's suit for lack of personal jurisdiction. He also filed a supporting affidavit. Though it contained neither denials of nor rebuttals to the allegations in Akro's complaint, it did state that Luker had never been in Ohio, and that Pretty Products was not his agent in Ohio or anywhere else.

On February 9, 1994, the trial court, applying the law of the Sixth Circuit and without benefit of a hearing, granted Luker's motion to dismiss Akro's declaratory judgment action. Akro timely filed the instant appeal.

## DISCUSSION

### I. *Choice of Law & Standard of Review*

We apply the law of the Federal Circuit, rather than that of the regional circuit in which the case arose, when we determine whether the district court properly declined to exercise personal jurisdiction over an out-of-state accused infringer. *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1564, 30 USPQ2d 1001, 1006 (Fed. Cir.), *cert. dismissed,* —— U.S. ——, 115 S.Ct. 18, 129 L.Ed.2d 917 (1994). The jurisdictional issue presented by an out-of-state patentee is no less intimately involved with the substance of the patent laws than that of an out-of-state accused infringer. Consequently, the instant case, like *Beverly Hills Fan,* presents a question of Federal Circuit law.

Where, as here, the facts upon which jurisdiction turns are undisputed, the matter presents a pure question of law, reviewable *de novo. Id.; North American Philips Corp. v. American Vending Sales, Inc.,* 35 F.3d 1576, 1578, 32 USPQ2d 1203, 1204 (Fed.Cir. 1994). In addition, where the plaintiff's factual allegations "are not directly controverted, [they] are taken as true for purposes of determining jurisdiction...." *Beverly Hills Fan,* 21 F.3d at 1563, 30 USPQ2d at 1005.

### II. *Analysis*

#### A. *Amenability to Service*

Amenability to service and the exercise of personal jurisdiction are linked together in the federal courts. The Supreme Court clarified the relationship between these two principles in *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). According to the Court,

> [B]efore a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There also must be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be

authorization for service of summons on the defendant.

*Id.* at 104, 108 S.Ct. at 409. More specifically, "under Rule 4(e),[1] a federal court normally looks either to a federal statute or to the long-arm statute of the State in which it sits to determine whether a defendant is amenable to service...." *Id.* at 105, 108 S.Ct. at 410.

Akro has not referred us to a federal statute that provides for Luker's amenability to service independent of Rule 4(e),[2] and we are aware of no such statute. We must therefore determine whether Akro can serve Luker under Ohio statutes and rules and, if so, whether jurisdiction can be maintained consistent with due process.

### B. *The Reach of Ohio's Long–Arm Statute*

The Ohio long-arm statute provides, in relevant part, that an Ohio court "may exercise personal jurisdiction over a person ... as to a cause of action arising from the person's ... [t]ransacting any business in this state...." OHIO REV.CODE ANN. § 2307.382(A)(1) (1991). The complementary procedural rule, Ohio Civil Rule 4.3(A)(1), authorizes out-of-state service of process on a defendant who is "[t]ransacting any business in" Ohio, and its reach is equal to that of the long-arm statute. *Goldstein v. Christiansen,* 70 Ohio St.3d 232, 638 N.E.2d 541, 544 (1994); *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.,* 53 Ohio St.3d 73, 559 N.E.2d 477, 479 (1990), *cert. denied,* 499 U.S. 975, 111 S.Ct. 1619, 113 L.Ed.2d 717 (1991).

The Sixth Circuit first held that the "transacting any business" portion of the Ohio long-arm statute extends to the greatest reach consistent with due process in *In–Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, 224–25 (6th Cir.1972). There is no shortage of cases reaffirming this construction of the statute,[3] and we elect to follow it. Our sole inquiry thus becomes whether the trial court can exercise personal jurisdiction over Luker in this case consistent with due process. *R.L. Lipton Distrib. Co. v. Dribeck Importers, Inc.,* 811 F.2d 967, 969 (6th Cir.1987) ("This Ohio [long-arm] statute has been construed to extend to the outer limits of due process, and thus an Ohio personal jurisdiction analysis becomes an examination of constitutional limitations.") (citation omitted).

### C. *The Requirements of Due Process*

Because subject matter jurisdiction over Akro's action exists by virtue of a federal question, rather than the diversity of the parties, "[t]he Due Process Clause that is at issue here is the Due Process Clause of the *Fifth Amendment.*" *Beverly Hills Fan,* 21 F.3d at 1560 n. 1, 30 USPQ2d at 1003 n. 1. The Supreme Court's constitutional jurisprudence of personal jurisdiction, however, includes only state and diversity cases, 4 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1067.1 at 305 (1987 & Supp.1994), and thus explicates the demands of the Fourteenth Amendment's Due Process Clause, rather than that

---

1. Rule 4(e) provides, in relevant part, as follows: "Whenever a statute of the United States or an order of court thereunder provides for service of a summons ... upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute or order, or, if there is no provision therein prescribing the manner of service, in a manner stated in this rule. Whenever a statute or rule of court of the state in which the district court is held provides ... for service of a summons ... upon a party not an inhabitant of or found within the state ... service may ... be made under the circumstances and in the manner prescribed in the statute or rule." FED. R.CIV.P. 4(e).

2. The only specific provision for service of process in patent suits applies to patentees "not residing in the United States," 35 U.S.C. § 293 (1988), and is not applicable here.

3. *Reynolds v. International Amateur Athletic Fed'n,* 23 F.3d 1110, 1116 (6th Cir.), *cert. denied,* ― U.S. ―, 115 S.Ct. 423, 130 L.Ed.2d 338 (1994); *Creech v. Roberts,* 908 F.2d 75, 79 (6th Cir.1990), *cert. denied,* 499 U.S. 975, 111 S.Ct. 1619, 113 L.Ed.2d 717 (1991); *American Greetings Corp. v. Cohn,* 839 F.2d 1164, 1167 (6th Cir.1988); *R.L. Lipton Distrib. Co. v. Dribeck Importers, Inc.,* 811 F.2d 967, 969 (6th Cir.1987); *Welsh v. Gibbs,* 631 F.2d 436, 439 (6th Cir.1980), *cert. denied,* 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981). *See also Columbus Show Case Co. v. CEE Contracting, Inc.,* 75 Ohio App.3d 559, 599 N.E.2d 881, 884 (1992).

of the Fifth's.[4] We, like the Seventh and Eighth Circuits,[5] have nonetheless applied the "minimum contacts" standard of *International Shoe* and its progeny to questions of personal jurisdiction in federal question cases, such as those arising under the patent laws. *See, e.g., North American Philips,* 35 F.3d at 1580, 32 USPQ2d at 1206; *Beverly Hills Fan,* 21 F.3d at 1565–69, 30 USPQ2d at 1006–10.

■ In *International Shoe Co. v. Washington,* the Supreme Court held that "due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). Subsequent cases clarify how minimal such "minimum contacts" may be without violating the due process rights of the defendant. The Court most recently summarized its "minimum contacts" jurisprudence as follows:

> The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations. By requiring that individuals have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign, the Due Process Clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.
>
> Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this fair warning requirement is satisfied if the defendant has *purposefully directed his activities at residents of the forum* and *the litigation results from alleged injuries that arise out of or relate to those activities....* Jurisdiction is proper ... where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum State. Thus where the defendant deliberately has engaged in significant activities within a State, or has *created continuing obligations between himself and residents of the forum,* he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–76, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985) (internal quotations and citations omitted) (emphasis added). In brief, the due process inquiry requires that we determine whether Luker "purposefully directed his activities at residents of" Ohio and, if so, whether "the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* at 472, 105 S.Ct. at 2182.

■ Satisfaction of these two conditions, while necessary, is not always sufficient to justify personal jurisdiction over the defendant. An additional fairness inquiry rounds out the determination whether personal jurisdiction can be exercised in a given case consistent with the Due Process Clause. As the Court held in *Burger King,*

> Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other

---

4. The Court never reached the due process question urged on it by the petitioner in *Omni Capital Int'l,* 484 U.S. at 102–03 n. 5, 108 S.Ct. at 408–09 n. 5, the only federal question case among those addressing the limits due process places on an otherwise lawful exercise of personal jurisdiction.

5. *See Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1389 n. 2, 20 USPQ2d 1450, 1453 n. 2 (8th Cir.1991) (applying Fifth Amendment in trademark infringement case); *Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137, 1143, 184 USPQ 387, 391–92 (7th Cir.1975) (applying Fifth Amendment in patent infringement case, and collecting federal question cases applying "minimum contacts" standard).

factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice.... [W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional. For example, ... a defendant claiming substantial inconvenience may seek a change of venue.

*Id.* at 476–77, 105 S.Ct. at 2184–85 (internal quotations and citations omitted). Where, as here, the defendant argues that, quite apart from the "minimum contacts" inquiry, the assertion of jurisdiction over his person fails to comport with notions of fair play and substantial justice, we must satisfy ourselves that the defendant has not presented a compelling case that jurisdiction would be constitutionally unreasonable. But the burden of proof is his.

*1. The Purposefully Directed Activities.*—Akro relies on both Luker's warning letters to its patent counsel and his entry into an exclusive license agreement regarding the '602 patent with Pretty Products to demonstrate that Luker has purposefully directed his activities at residents of Ohio. As Akro correctly observes, Luker initiated each of the contacts with Ohio, directing them toward residents of Ohio—either Pretty or Akro—over a span of three years. Moreover, as Luker made clear in one if his letters to Akro, dated April 20, 1992, the exclusivity of his license agreement with Pretty Products created continuing obligations between Pretty and Luker and "eliminate[d] any possibility of his entering into any type of licensing arrangement" with Akro. Indeed, it could scarcely be more clear that Luker purposefully directed activities at residents of Ohio within the meaning

of the due process inquiry mandated by *Burger King* and *International Shoe.*

Luker makes two arguments aimed at weakening this conclusion. Both are unavailing. First, in an effort to reduce the extent to which his activities were directed at Ohio, Luker argues that all the warning letters but his first were directed to Akro's counsel in North Carolina, not to Akro in Ohio. To sanction this argument, we must both ignore basic principles of agency law [6] and "exalt form over substance in an area where the Supreme Court generally has cautioned against such an approach." *North American Philips,* 35 F.3d at 1579, 32 USPQ2d at 1205 (citing *Burger King,* 471 U.S. at 478–79, 105 S.Ct. at 2185–86). We therefore conclude, instead, that all Luker's warning letters were, for purposes of our due process inquiry, directed to Akro in Ohio.

Second, Luker contends that the terms of his license agreement with Pretty Products are not properly before us, and that they can thus play no role in our due process analysis. Akro, however, entered Luker's warning letters into the trial record as appendices to its memorandum in opposition to Luker's motion to dismiss, and into the appellate record as an appendix to its opening brief. The letters, which make clear the principal terms of the agreement, are therefore properly before us. Alternatively, Luker asserts that to consider the terms of the agreement as part of our jurisdictional inquiry would be impermissibly to rely on hearsay. Luker did not, however, object to the truth of the statements in the letters, nor to their status as hearsay, when the letters were presented to the trial court. Such objections have thus been waived. Finally, even if Luker *had* objected to the hearsay nature of the statements at trial, such an objection would have been overruled, as we have held that hearsay "bear[ing] circumstantial indicia of reliability" may be admitted for purposes of determining whether personal jurisdiction obtains. *Beverly Hills*

---

**6.** *See, e.g.,* 3 Am.Jur.2d *Agency* § 2 at 510 (1986) ("The fundamental idea of agency has its conception in something lawful that a person may do and a delegation by such person to another of the power lawfully to do that thing. It is, accordingly, a consequence of the relationship that whatever an agent does in the lawful prosecution of the transaction entrusted to him is the act of the principal, and it is a fundamental maxim of agency that 'qui facit per alium facit per se,' that is to say, he who acts through another acts by or for himself.") (footnotes omitted).

*Fan,* 21 F.3d at 1562, 30 USPQ2d at 1004. *See also* FED.R.EVID. 801(d)(2) (excluding party-opponent admissions from definition of hearsay).

*2. Their Relationship to the Cause of Action.*—Having concluded that Luker purposefully directed activities regarding the '602 patent at both Akro and Pretty Products in Ohio, we must next consider whether Akro's action for declarations of noninfringement, invalidity, and unenforceability of the '602 patent "arise[s] out of or relate[s] to those activities." *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182.

The Supreme Court has avoided general pronouncements on the nexus required to satisfy this "arise out of or relate to" prong of the due process inquiry. *See, e.g., Carnival Cruise Lines v. Shute,* 499 U.S. 585, 589, 111 S.Ct. 1522, 1525, 113 L.Ed.2d 622 (1991) (declining to reach the issue despite having certified it for review); *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 415 n. 10, 104 S.Ct. 1868, 1872 n. 10, 80 L.Ed.2d 404 (1984) (declining to reach the issue). Nonetheless, a few guideposts do exist in this area. The Court's holdings in *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), and *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), make it clear that the plaintiff need not be the forum resident toward whom any, much less all, of the defendant's relevant activities were purposefully directed. In both cases, the plaintiffs brought state law libel actions against out-of-state publishers and, in *Calder,* authors and editors. The Court concluded in both cases that personal jurisdiction over the defendants would not violate due process where the publications containing the alleged libels were purposefully directed to consumers within the forum state. Indeed, in *Calder,* such purposeful circulation was enough to ground personal jurisdiction over the reporter who wrote the story and the editor who put it into its final form. 465 U.S. at 789–90, 104 S.Ct. at 1487–88. Second, as the First Circuit recently observed, "it [is] significant that the constitutional catch-phrase ['arise out of or relate to'] is disjunctive in nature," indicating "added flexibility and signal[ing] a relaxation

of the applicable standard" from a pure "arise out of" standard. *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 206 (1st Cir.1994) (collecting cases). With both these guideposts in mind, we survey the various cases to which Akro and Luker analogize the instant case.

Akro relies principally on *B & J Mfg. v. Solar Indus.,* 483 F.2d 594 (8th Cir.1973), *cert. denied,* 415 U.S. 918, 94 S.Ct. 1417, 39 L.Ed.2d 473 (1974), and *Nova Biomedical Corp. v. Moller,* 629 F.2d 190 (1st Cir.1980). *B & J Manufacturing,* like the instant case, involved an action for a declaratory judgment of patent invalidity and noninfringement. The action was filed in the District of Minnesota by a Minnesota corporation against the patentee, an Illinois corporation. The Illinois corporation was alleged to have the following contacts with Minnesota: (1) it sent warning letters to the plaintiff in Minnesota; (2) it sold products other than the one covered by the patent at issue to consumers in Minnesota; and (3) it advertised its products in national publications, some of which were distributed in Minnesota. 483 F.2d at 598. Affirming the trial court's holding that personal jurisdiction comported with due process on these facts, the Eighth Circuit reasoned as follows:

> The fact that the defendant has, itself, not directly or indirectly sold the [competing product at issue] in the state because it did not wish the plaintiff to be able to obtain jurisdiction over it in this action hardly defeats jurisdiction here.... It is evident from the trial court's findings of fact that the quantity, quality and nature of the defendant's contacts with the jurisdiction are substantial. The defendant has voluntarily entered into a number of business transactions, including the acquisition of the patent and attempts at enforcement, which it knew would have consequences in the state. Moreover, in view of the defendant's extensive contacts with the forum, *we believe that the contacts are sufficiently connected with the cause of action to satisfy due process.* Furthermore, Minnesota most certainly has an interest in providing a forum for a resident who claims that a foreign corporation is attempting to pre-

vent it from manufacturing and marketing its product.

*Id.* at 598–99 (citations omitted) (emphasis added). The primary difference between *B & J Manufacturing* and the instant case is that Luker, rather than selling unrelated products within the forum state, granted an exclusive license to one of the accused infringer's competitors. As Luker indicates, the Eighth Circuit has since commented on *B & J Manufacturing* in *Land–O–Nod Co. v. Bassett Furniture Indus.,* 708 F.2d 1338 (8th Cir.1983). In *Land–O–Nod,* the court expressed the view that the court in *B & J Manufacturing* "did not specifically discuss in its due process analysis the relationship of the cause of action to the forum." *Id.* at 1342. As the emphasized portion of the above quotation from *B & J Manufacturing* makes clear, however, the *Land–O–Nod* court's observation in this regard is simply incorrect. Thus, Luker's reliance on the ersatz critique of *B & J Manufacturing* presented in *Land–O–Nod* to the contrary notwithstanding, we find strong support for Akro's position in *B & J Manufacturing.*

In *Nova Biomedical,* the First Circuit spent the bulk of its time discussing the breadth of the "transacting any business" clause of the Massachusetts long-arm statute. 629 F.2d at 193–97 (concluding that the defendant had transacted business for purposes of the statute). The plaintiff sought a declaration that the out-of-state patentee's patent was invalid, not infringed, and unenforceable. *Id.* at 191. The foreign patentee's contacts with the forum state were three: (1) he sent the plaintiff two warning letters; (2) prior to sending the warning letters, he entered into a cross-licensing agreement with an in-state competitor of the plaintiff; and (3) he sold products, almost all of which were unrelated to the patent in suit, to his in-state cross-licensee. *Id.* at 191–92. Calling the defendant's contacts with the forum "extensive and ongoing," the court simply noted in passing that "[t]here is little dispute that the assertion of jurisdiction would comport with due process." *Id.* at 193. It did not, however,

reach the question whether the declaratory judgment action "can be said to 'arise from' Moller's principal contacts with the forum." *Id.* at 193 n. 3. This case implicitly provides some support for Akro's position in the instant case.

The cases on which Luker relies, by contrast, are uniformly unavailing. Three of the cases which Luker cites in the course of his argument expressly declined to reach the due process prong of the personal jurisdiction inquiry, having held that the state long-arm statutes at issue did not reach the defendants. *Hydraulics Unlimited Mfg. v. B/J Mfg.,* 449 F.2d 775, 777 (10th Cir.1971); *Unistrut v. Baldwin,* 815 F.Supp. 1025, 1027 (E.D.Mich.1993); *Shepard's McGraw–Hill, Inc. v. Legalsoft Corp.,* 769 F.Supp. 1161, 1165 (D.Colo.1991). They thus have nothing to teach about the due process questions raised here.

Luker cites the following cases for the proposition that warning letters from and negotiations for a license with an out-of-state patentee cannot, without more, support personal jurisdiction in an action for a declaratory judgment of patent invalidity and noninfringement: *Ryobi America Corp. v. Peters,* 815 F.Supp. 172, 176 (D.S.C.1993); *KVH Indus. v. Moore,* 789 F.Supp. 69, 72–73 (D.R.I. 1992); *Consumer Direct Inc. v. McLaughlin,* 138 F.R.D. 519, 20 USPQ2d 1949, 1951 (N.D.Ohio 1991); *Gesco Int'l Inc. v. Luther Medical Prods., Inc.,* 17 USPQ2d 1168, 1171, 1990 WL 505456 (W.D.Tex.1990); *Boatel Indus. v. Wollard,* 2 USPQ2d 1946, 1948, 1987 WL 125074 (D.Minn.1987); *Classic Golf Co. v. Karsten Mfg. Co.,* 231 USPQ 884, 885, 1986 WL 8953 (N.D.Ill.1986); *Rheodyne, Inc. v. Ramin',* 201 USPQ 667, 669, 1978 WL 21392 (N.D.Cal.1978). The cases Luker cites on this particular point, however accurately described, are simply inapposite. The case at bar involves an additional activity aimed at the forum state—namely, the patentee's exclusive licensing of one of the accused infringer's competitors within the forum state.[7] Luker's exclusive license agreement with

---

7. Interestingly, in *Consumer Direct,* a personal jurisdiction case involving Ohio's long-arm statute, the court noted the lack of any in-state licensee as among the facts demonstrating that

the defendant patentee had not purposefully directed his activities toward the state of Ohio. 138 F.R.D. at 522–23, 20 USPQ2d at 1951.

Akro's local competitor Pretty Products undoubtedly relates to Akro's challenge to the validity and enforceability of the '602 patent. Indeed, the agreement obliges Luker "to defend and pursue any infringement against" the '602 patent.

Luker further argues that "[s]everal cases have found no personal jurisdiction ... where the contacts with the forum state include ... infringement letters and a license agreement." The cases Luker cites, however, involved defendant licensees who, like the defendant patentees, were *not* residents of the forum state. *Tol–O–Matic, Inc. v. Proma Produkt–Und Marketing Gesellschaft, m.b.H.,* 690 F.Supp. 798, 800 (D.Minn.1987); *Aluminum Housewares Co. v. Chip Clip Corp.,* 609 F.Supp. 358, 360 (E.D.Mo.1984); *S.S. Kresge Co. v. Kamei–Autokomfort,* 363 F.Supp. 257, 258 (D.Minn.1973). Again, the cases are simply inapposite.

We conclude that Akro's declaratory judgment action arises out of or relates to the activities Luker purposefully directed at residents of Ohio.

■ *3. The Constitutional Reasonableness of Jurisdiction.*—As *Burger King* indicates, where personal jurisdiction has been shown to otherwise comport with due process, the defendant may yet defeat it on constitutional grounds if he can make "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." 471 U.S. at 477, 105 S.Ct. at 2185. As we noted in *Beverly Hills Fan,* such defeats of otherwise constitutional personal jurisdiction "are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." 21 F.3d at 1568, 30 USPQ2d at 1009.

Akro argues, quite rightly, that Ohio "has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King,* 471 U.S. at 473, 105 S.Ct. at 2182 (quoting *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)). The injury of which Akro complains—restraint of its production of goods by means of a non-infringed, invalid and/or unenforceable patent—falls well within the boundaries of the sorts of injuries that Ohio has an interest in discouraging. *See Beverly Hills Fan,* 21 F.3d at 1568, 30 USPQ2d at 1009 (Virginia's interest in discouraging injuries within its boundaries "extends to design patent infringement actions"). Importantly, "[t]hat it is to plaintiff's advantage to adjudicate the dispute in the district court" that it has chosen "does not militate against its right to have access to that court." *Id.* The district court in which Akro filed its action "is part of the exclusive mechanism established by Congress for the vindication of patent rights. The fact that it [may have] unique attributes of which plaintiff ... has an interest in taking advantage does not change the case." *Id.* at 1568–69.

Luker, despite bearing the burden on this issue, points to no considerations rendering jurisdiction unreasonable that could not be addressed by filing for a change of venue under 28 U.S.C. § 1404(a) (1988). Indeed, he points to no such considerations at all, incorrectly asserting that the burden is on Akro to show that jurisdiction is reasonable in this case. We therefore conclude that personal jurisdiction over Luker has not been shown to be unconstitutionally unreasonable.

### CONCLUSION

Because Luker purposefully directed activities regarding the '602 patent toward residents of Ohio, those activities are related to Akro's cause of action, and Luker failed to demonstrate that jurisdiction over him would be unconstitutionally unreasonable, the trial court erred in concluding that it could not exercise personal jurisdiction over Luker consistent with due process. For these reasons, the decision of the trial court must be and is reversed and the case remanded for further proceedings.

*REVERSED AND REMANDED.*

### COSTS

Appellee Ken Luker to bear costs.