Brookstone v. Bai          CV-96-327-B          05/27/97

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


**Brookstone, Inc.**

    **v.**                                                  Civil No. 96-327-B

**Carl B. Bai f/k/a
Henry S. Bai**


O R D E R


Brookstone, Inc. filed this declaratory judgment action against Carl B. Bai after Bai and his counsel sent several letters charging patent infringement to Brookstone's New Hampshire home office. Bai, who has had no other direct contacts with New Hampshire, moves to dismiss for lack of personal jurisdiction. For the reasons that follow, I grant Bai's motion.


**BACKGROUND**

In April, 1977, Bai obtained a patent (the '076 patent) for a target game in which the players toss a Velcro-covered ball back and forth.[1] The ball is designed to adhere to a dish-shaped fabric-covered mitt or glove.

Bai initially distributed toys protected by the '076 patent through Koram Corporation, an Illinois corporation he then headed. Koram sold the protected toys to J.C. Penney's western region buying office and several Sears stores in the San

_____

[1] The patent has since expired.

1

Francisco area. Koram also distributed toys through a sales representative in Massachusetts and several other states and a distributor in southern Connecticut. He also marketed products protected by the '076 patent by distributing catalogs at national trade shows in New York and Illinois. Bai later licensed games covered by the patent to several other companies, including Herman's World of Sporting Goods, which conducts business in New Hampshire. However, Brookstone has not identified any evidence suggesting that any of the protected products ever found their way to New Hampshire.

From July 1993 until February 1996, Bai and his counsel sent a total of five letters to Brookstone's New Hampshire home office alleging that Brookstone was selling a game that infringed the '076 patent. After receiving the fifth letter, Brookstone agreed to consider Bai's claim. It filed this action after settlement efforts proved unsuccessful

## I. <u>DISCUSSION</u>

Brookstone, as the party seeking to invoke the court's jurisdiction, bears the burden of proving the existence of personal jurisdiction. <u>Sawtelle v. Farrell</u>, 70 F.3d 1381, 1387 (1st Cir. 1995); <u>Ticketmaster v. Alioto</u>, 26 F.3d 201, 207 n.9

(1st Cir. 1994)[2].  Personal jurisdiction must exist under both the applicable state long-arm statute and the Constitution's Due Process Clause.  Viam Corp. v. Iowa Export-Import Trading Co., 84 F.3d 424, 427 (Fed. Cir. 1996).

To carry the burden of proof when there has been no evidentiary hearing, the plaintiff must make a prima facie showing of personal jurisdiction by offering "evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction."  Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992);  accord Spectronics Corp. v. H.B. Fuller Co., 940 F.2d 631, 635 (Fed. Cir. 1991).  The plaintiff "ordinarily cannot rest upon the pleadings, but is obliged to adduce evidence of specific facts," and the court "must accept the plaintiff's (properly documented) evidentiary proffers as true" and make its ruling as a matter of law.  Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995); United Elec. Workers v. 163 Pleasant St. Corp., 987 F.2d 39, 44 (1st Cir. 1993).  An evidentiary hearing will be required only if the court

---

[2]  The Federal Circuit follows its own law on personal jurisdiction where a conflict exists with law of another circuit. Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir.); cert. denied, 115 S. Ct. 2277 (1995).  Therefore, I refer to the law of the Federal Circuit, to the extent that it exists, but rely on the law of the First Circuit to fill any gaps in the developing body of Federal Circuit law.

3

determines that it would be unfair to the defendant to resolve the issue without requiring more than a prima facie showing of jurisdiction by the plaintiff. Foster-Miller, 46 F.3d at 146.

## A. New Hampshire Long-Arm Statute

Because the applicable federal patent laws do not provide for personal jurisdiction or nationwide service of process, I look to New Hampshire's long-arm statute to provide the applicable standard. Fed. R. Civ. P. 4(k)(1); Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 108 (1987); Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1569 (Fed. Cir. 1994). New Hampshire's long-arm statute for non-resident individuals provides:

> Any person who is not an inhabitant of this state and who, in person or through an agent, transacts any business within this state, commits a tortious act within this state, or has the ownership, use, or possession of any real or personal property situated in this state submits himself, or his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from or growing out of the acts enumerated above.

N.H. Rev. St. Ann. 510:4, I (1983). The New Hampshire Supreme Court construes the statute "to provide jurisdiction over foreign defendants to the full extent that the statutory language and due process will allow." Phelps v. Kingston, 130 N.H. 166, 171 (1987). Therefore, I need only address the constitutional

4

requirements of due process.

## B.  **Due Process**

The Due Process Clause limits a state's power to assert personal jurisdiction over nonresident defendants.[3]  Helicopteros Nacionales De Colombia, S.A. v. Hall, 466 U.S. 408, 413-14 (1984) (citing Pennoyer v. Neff, 95 U.S. 714 (1877)).  For the court to properly assert personal jurisdiction over an absent non-resident defendant, the defendant must have had "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Helicopteros, 466 U.S. at 414 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); see also Viam, 84 F.3d at 428-429.  To satisfy this requirement, the defendant's conduct should bear such a "substantial connection with the forum [s]tate" that the defendant "should reasonably anticipate being haled into court there."  Burger King Corp. v. Rudzewicz, 471

---

[3] The circuits disagree whether the due process analysis for personal jurisdiction in federal question cases relying on a state long-arm statute is controlled by the Fifth or Fourteenth Amendments.  Compare Akro, 45 F.3d at 1544-45 (5th  Amendment) with United Elec. Workers, 960 F.2d at 1085-86 (14th  Amendment). This amounts to a distinction without a difference, however, as the jurisdictions that follow a Fifth Amendment analysis apply the same "minimum contacts" standard stemming from International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) as those using a Fourteenth Amendment analysis.  See Akro, 45 F.3d at 1545.

U.S. 462, 473-75 (1985) (internal quotations omitted).

Courts traditionally analyze personal jurisdiction questions by attempting to determine whether the court has general or specific jurisdiction. See Foster-Miller, 46 F.3d at 144. However, when jurisdiction is founded exclusively on a "defendant's contacts [which] are the result of establishing a distribution network in the forum State for the sale of the defendant's products," the federal circuit has determined that general and specific jurisdiction analysis is not useful and courts should instead determine whether jurisdiction can be based on a "stream of commerce" theory. Viam, 84 F.3d at 427. This approach must be used regardless of whether the defendant is an alleged infringer or a patentee claiming infringement. Id. at 428. Since Brookstone claims that the court has jurisdiction over Bai both because he sent infringement letters to Brookstone's New Hampshire office and because he established a distribution network in the state, I analyze its claim using both analytical models.

## 1. The general/specific jurisdiction model

If a defendant's activities within the forum state are unrelated to the litigation but are "continuous and systematic" or "substantial," the defendant has a sufficient relationship

6

with the forum to support general jurisdiction. <u>Helicopteros</u>, 466 U.S. at 413-14. To the extent that Brookstone alleges that the court has general jurisdiction over Bai, its argument fails. Bai has never lived in or even visited New Hampshire. He has never conducted any business here, nor has he possessed any property, paid any taxes, obtained a license to do business or had a bank account in New Hampshire. His contacts are neither substantial, continuous, nor systematic. In short, Bai's contacts with the state are too few to support a finding of general jurisdiction.

A court may exert specific jurisdiction even though it lacks general jurisdiction if the plaintiff can show that the defendant's contact with the forum state meets three requirements. <u>Foster-Miller</u>, 46 F.3d at 144. First, the claim underlying the litigation must "arise[] directly out of, or relate[] to, the defendant's forum-state activities." <u>United Elec. Workers</u>, 960 F.2d at 1088-89. Second, the plaintiff must show that the defendant's in-state contacts represent purposeful availment of the privilege of conducting activities in the forum state invoking the benefits and protection of the state's laws and making the defendant's involuntary presence before the state courts foreseeable. <u>Id.</u>; <u>Ticketmaster</u>, 26 F.3d at 206. Finally,

7

the defendant's contacts with the forum state must be analyzed in light of certain other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." Akro, 45 F.3d at 1545; see also Burger King, 471 U.S. at 477.

The court lacks specific jurisdiction over Bai because Brookstone cannot show that he purposefully availed himself of the privilege of conducting business in New Hampshire. Brookstone bases its claim primarily on Bai's infringement letters. However, such letters, standing alone, do not fulfill the purposeful availment requirement. Beacon Enter., Inc. v. Menzies, 715 F.2d 757, 766 (2d Cir. 1983) ("It is diffcult to characterize [defendant's] letter alleging infringement in an unspecified location and threatening litigation in an unspecified forum as invoking the 'benefits and protections' of [the forum state's] law."); Nova Biomedical Corp. v. Moller, 629 F.2d 190, 197 (1st Cir. 1980) ("the mailing of an infringement notice -- standing alone -- has rarely been deemed sufficient to satisfy the constitutional standard"); Cf. Akro, 45 F.3d at 1546-49 (infringement letters met due process requirement only in combination with defendant's exclusive licensing agreement with a competitor in the forum state). As I explain below, the

8

only additional evidence Brookstone can marshal to support its claim -- evidence that Bai sold or licensed for sale games protected by the '076 patent in states other than New Hampshire -- does nothing to support its claim that Bai purposefully availed himself of the privilege of conducting business here. Accordingly, Bai's infringement letters will not be sufficient to support Brookstone's specific jurisdiction claim because the company has failed to identify any other evidence suggesting that Bai purposely availed himself of the privilege of conducting business in this state.

### 2. The Stream of Commerce Model

Brookstone alternatively argues that Bai's placement of his products into the "stream of commerce" subjects him to jurisdiction in this state. The Federal Circuit has identified two versions of the stream of commerce theory. <u>Beverly Hills Fan</u>, 21 F.3d at 1566. The narrow version, based on Justice O'Connor's plurality opinion in <u>Asahi Metal Indus. v. Superior Court</u>, 480 U.S. 102 (1987), requires a showing that the defendant that placed its products into the stream of commerce also took some additional step that evidences a purpose to serve the forum state market. <u>Id.</u> at 112. The broader version, proposed by Justice Brennan in his plurality opinion in <u>Asahi</u>, considered such an

9

additional step unnecessary. Id. at 117. The Federal Circuit has not yet determined which version of the stream of commerce theory should prevail. See Beverly Hills Fan, 21 F.3d at 1566; Viam, 84 F.3d at 428; compare Boit, 967 F.2d at 682-83 (rejecting broad version of stream of commerce theory). However, I need not resolve this issue here because Brookstone cannot satisfy either version's requirements.

Brookstone asserts that Bai's placement of his patented products with national retailers such as J.C. Penney and Sears made it reasonably foreseeable that his products would be sold in this state. However, Brookstone has not offered evidence of a single sale of a patented product in New Hampshire by those companies. While J.C. Penney and Sears undoubtedly sell many of their products nationwide, Bai asserts that he sold his patented products only to J.C. Penney's western region buying office and a few isolated Sears stores on the west coast. There is no evidence in the record to suggest that either retailer ever sold Bai's patented products in other parts of the country.

Next, Brookstone points out that Bai distributed catalogs listing products protected by the '076 patent at national trade shows in New York and Illinois, and Koram distributed patented products through a sales representative in Massachusetts and

through a distributor in southern Connecticut. However, Brookstone has not identified any evidence demonstrating that any patented product reached New Hampshire, was sold in New Hampshire or was purchased from New Hampshire. As even Justice Brennan acknowledged, "the stream of commerce refers not to unpredictable currents or eddies . . . a participant in this process [must be] aware that the final product is being marketed in the forum State" to satisfy due process. Ashai, 480 U.S. at 117. Brookstone has failed to identify any evidence that would warrant such a conclusion in this case.

Finally, Brookstone argues that Bai's license to Herman's, which does business in New Hampshire, is additional evidence supporting its stream of commerce argument. I disagree. Unlike an exclusive licensing arrangement, this type of non-exclusive license should not subject Bai to jurisdiction in the forum merely because a licensed company does business there. At the time he granted Herman's a license, Bai may or may not have known that Herman's conducted business in New Hampshire, and Brookstone has offered no evidence to suggest that Bai had any control over whether Herman's sold the licensed products. See Burger King, 471 U.S. at 475 (defendant's contacts must be voluntary rather than unilateral activity of third party). Therefore, Herman's

11

subsequent sales of Bai's licensed product, without more, is more properly seen as a business effort by that company, and not Bai, and cannot support jurisdiction.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss (document no. 9) is granted.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

May 27, 1997

cc:  Donald A. Burns, Esq.
     Neil G. Cohen, Esq.
     Christopher Gagne, Esq.
     Jeffrey N. Danis, Esq.