### COMPASS WORLDWIDE, INC., Plaintiff,

v.

### PINNACLE EQUIPMENT, INC., et al., Defendants.

### Civil Action No. 3:02CV–605–S.

United States District Court, W.D. Kentucky, at Louisville.

Aug. 28, 2003.

David Wayne Nagle, Jr., Jennifer L. Kovalcik, Joel T. Beres, Mandy V. Wilson, Stites & Harbison, Louisville, KY, for Plaintiff.

Albert L. Schmeiser, Pacer K. Udall, Schmeiser, Olsen & Watts, Mesa, AZ, Michael R. Gosnell, Louisville, KY, for Pinnacle Equipment, Inc., Arthur S. Beeman, Thomas Patrick O'Brien, III, Frost Brown Todd LLC, Louisville, KY, for Defendants.

## MEMORANDUM OPINION AND ORDER

SIMPSON, District Judge.

This matter is before the court on motion of the defendant, Pinnacle Equipment, Inc. ("Pinnacle"), to dismiss the action as to it for lack of personal jurisdiction.[1] In this case, the plaintiff, Compass Worldwide, Inc. ("Compass"), a manufacturer of viscous food product dispensers, alleges that (1) Pinnacle breached the license agreement between them, and (2) Pinnacle

---

1. At the time of the filing of the motion, Pinnacle was the only defendant in the case. Compass has since filed an amended complaint adding Nestle USA, Inc., Merkle–Korff Industries, Inc., and Truserve Products, Inc. as defendants. The amended complaint does not appear to affect the basis for Pinnacle's motion to dismiss. Therefore the court will decide the matter, taking the allegations of the amended complaint as true, for purposes of this opinion.

has been and is continuing to infringe two patents owned by Compass. Pinnacle has moved to dismiss the action for lack of personal jurisdiction and for improper venue.

When a motion to dismiss is made, the court must take the allegations of the complaint as true and grant dismissal only when it is beyond doubt that the plaintiffs can prove no set of facts entitling them to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

According to the allegations of the complaint, the following series of events led to the filing of the present action against Pinnacle:

James R. Wheeler, the president of Pinnacle, was the inventor of devices for which he was awarded U.S. Patent N. 5,803,317 (the " '317 patent") on July 22, 1996, and U.S. Patent No. 6,003,733 (the " '733") on December 21, 1999. Amended Complaint ("AC"), ¶¶ 6,8. Wheeler assigned these patents to Compass for $100,000.00 each. AC, ¶¶ 6,8.[2] The patented devices are dispensers for heated viscous food products. AC, ¶¶ 6–9.

Compass is a Kentucky corporation with its principle place of business in Louisville. AC, ¶ 4. Compass is in the business of licensing intellectual property associated with viscous food dispensers. AC, ¶ 5. Pinnacle is a California corporation with its principle place of business in Rocklin, California. AC, ¶ 10. Pinnacle is a seller of viscous food dispensers and directly competes with authorized licensees of Compass in the sale of such dispenser. AC, ¶ 11.

In early 2000, Pinnacle contacted Compass seeking a license for the '317 and '733 patents. AP, ¶¶ 12, 13. On April 6, 2000, Pinnacle executed a written license agreement in Louisville granting Pinnacle a non-exclusive right to make use and sell dispensers under the patents. AP, ¶¶ 3, 13.[3]

In the summer of 2001, Pinnacle began selling and distributing dispensers and making royalty payments under the agreement. AP, ¶ 14. During the period mid–2001 through mid–2002, Compass and Pinnacle repeatedly corresponded concerning the quarterly distribution reports and royalty payments. Each time a quarterly report and payment became due, Pinnacle failed to send them. Compass would provide written notice to Pinnacle that it was in breach of the agreement, and Pinnacle would then cure the breach by sending Compass the documentation and payment. The relationship continued on in this fashion until September 20, 2002 when Pinnacle sent written notice to Compass that it did not believe that its dispensers fell within the scope of the claims of the '317 patent and that it believed that the '733 patent was invalid. Pinnacle thereafter refused to make further royalty payments under the agreement. AP, ¶¶ 23–25. After the passage of the sixty-day cure period during which Pinnacle did not send its report or payment, Compass sent Pinnacle written notice dated October 3, 2003 that the license agreement had terminated and that further use sale, or offer for sale of dispensers would constitute infringement of the '317 and '733 patents. AP, ¶ 25. Pinnacle has continued to make and sell

---

**2.** It is interesting to note, but immaterial to our determination on this motion, that Wheeler was formerly employed by Compass.

**3.** In its memorandum, Pinnacle contends that the license agreement was not entered into in Kentucky (sequential page 5 of Memorandum in Support of Defendant's Motion to Dismiss),

but the statement is not supported by any evidence of record. The agreement itself does not indicate where it was executed. The allegation of the Amended Complaint, ¶ 3 stands uncontroverted and must be taken as true for purposes of this motion.

viscous cheese products, AP, ¶ 26, so this suit for breach of the agreement and for infringement resulted.

There are three additional defendants which were added via the amended complaint. Nestle USA, Inc. purchases dispensers from Pinnacle and sells them worldwide. AP, ¶¶ 28, 29. Merkle–Korff Industries, Inc. is the exclusive manufacturer of Pinnacle dispensers. AP, ¶ 42. TruServe Products, Inc., a California corporation, is alleged to be affiliated with Pinnacle. AP, ¶¶ 47–59. Patent infringement is alleged against all four defendants. Breach of contract is alleged only as to Pinnacle.

Pinnacle has moved to dismiss the action for lack of personal jurisdiction, contending that it has not sold dispensers in Kentucky and does not have a business presence in Kentucky. It contends that any dispensers that have been sold in Kentucky were sold by Nestle, which has sole control over these sales. Indeed, in the amended complaint Compass states that

37. At least with respect to viscous cheese dispensers manufactured by or on behalf of Pinnacle, customers of Nestle purchase such viscous cheese dispensers directly from Nestle through Nestle controlled advertisements and order forms . . .

38. At least with respect to viscous cheese dispensers manufactured by or on behalf of Pinnacle, Nestle specifies the shipping instructions and pays for shipping and handling of the dispensers from the manufacturing facility to the end customer . . .

39. At least with respect to viscous cheese dispensers manufactured by or on behalf of Pinnacle, once the dispensers are delivered from the manufacturing facility to the common carrier, which is approved by Nestle, the dispensers are owned by and become the responsibility of Nestle.

AP, ¶¶ 37–39.

Thus it appears from the allegations that individual sales into Kentucky by Nestle are attenuated from the manufacturing and sale of the dispenser by Pinnacle. These sales are therefore insufficient to establish the required minimum contacts to hale Pinnacle into court here.

Compass asserts that Pinnacle essentially follows its dispensers to Kentucky by providing a warranty and customer service program for Nestle's purchasers, either directly or through its manufacturer, Merkle–Korff. Compass contends that Pinnacle provides a phone number, and identifies itself as Pinnacle customer service to customers who call with questions concerning their dispensers.[4] Compass cites no authority for the proposition that providing a customer service telephone number is sufficient to establish personal jurisdiction. The court is dubious of such a proposition.

■ The court concludes on other facts that Pinnacle had sufficient contacts with Kentucky to make it reasonable to require it to defend the suit in this state. The origination of the relationship between Compass and Pinnacle was the license agreement. According to the amended complaint, Pinnacle approached Compass about the formation of the license agreement in Kentucky, it was entered into here, there were repeated communications between the parties concerning the reports of the manufacture and sale of licensed dispensers and payment therefore, and these reports and payments were sent to Compass in Kentucky. When Pinnacle de-

---

4. These allegations are not contained in the complaint. This information was gleaned from the deposition of Wheeler, to which the brief refers.

termined to stop paying royalties on its dispensers, it sent notice to Compass that it believed that its dispensers did not fall within the scope of the '317 patent (i.e. that its continued sale of such dispensers would not constitute infringement) and that it believed that the '733 patent was invalid. Pinnacle's continued manufacture and sale of its dispensers outside of the license agreement resulted in the infringement claims now asserted.

■ As the claims in this action are "intimately involved with the substance of the patent laws," the court must apply the law of the Federal Circuit to determine whether personal jurisdiction exists. *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir.1995), *cert. denied*, 515 U.S. 1122, 115 S.Ct. 2277, 132 L.Ed.2d 281 (1995). The Federal Circuit looks to the reach of the state long-arm statute and then at whether the assertion of personal jurisdiction would violate due process. *Genetic Implant Systems, Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed.Cir.1997) (*citing, Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The Kentucky long-arm statute has been found to be co-extensive with the limits of due process. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1273 (6th Cir.1998). In making that determination, the Federal Circuit has established a three-factor test. The three factors are: (1) whether the defendant "purposefully directed" its activities at residents of the forum; (2) whether the claim "arises out of or relates to" the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is "reasonable and fair." *Akro Corp.*, 45 F.3d at 1545.

In the case of *Inamed Corporation v. Kuzmak*, 249 F.3d 1356 (Fed.Cir.2001) the United States Court of Appeals for the Federal Circuit held that the defendant had had the requisite minimum contacts with California, finding that "the combination of Dr. Kuzmak's infringement letter and his negotiation efforts which culminated in four license agreements with Inamed [were] sufficient to satisfy the first factor in the three-part *Akro* test." *Inamed*, 249 F.3d at 1362. Finding that the defendant's efforts were purposefully directed toward the forum, despite a lack of any physical presence there by Kuzmak, the court found significant that Kuzmak had solicited license agreements from Inamed, that he had then determined that the latest agreement was terminated, and that he had provided notice by letter of his position that Inamed was infringing the patent. The negotiation efforts and ensuing license agreements in combination with the subsequent letter sent by the defendant constituted the necessary purposeful availment. *See, also, Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Foundation*, 297 F.3d 1343, 1351–52 (Fed.Cir.2002)(sufficient minimum contacts found in relation to a license agreement, where the negotiations were accomplished via telephone and mail). We are faced here with virtually the same facts. Pinnacle sought and obtained a license agreement with Compass in Kentucky. Pinnacle performed under that agreement, corresponding with Compass and paying royalties to it here. Pinnacle then refused to further comply with the agreement and sent a letter to Compass asserting invalidity of one patent and non-infringement of the other patent. In accord with the Federal Circuit, we find that this scenario establishes purposeful availment by Pinnacle in Kentucky.

The *Inamed* court found that the second factor, that the plaintiff's claims arose from those activities, was also satisfied:

Dr. Kuzmak ... contends that Inamed's claim does not "arise from or relate to" his prior negotiations and li-

cense agreements with Inamed, at least partly because the agreements had been terminated by the time he sent the infringement letter. We disagree. Although the nexus necessary to satisfy the "arise out of or related to" requirement of the due process inquiry has not been clearly delineated by the Supreme Court, we have stated that it is significant that the constitutional catch-phrase is disjunctive in nature, indicating an added flexibility and signaling a relaxation of the applicable standard from a pure "arises out of" standard. *Akro*, 45 F.3d at 1547, 33 USPQ2d at 1509–10. With this principle in mind, we conclude that Inamed's ... cause of action at least "relates to" if not outright "arises out of" Dr. Kuzmak's prior negotiation efforts leading to the parties' license agreements ... Hence, despite the fact that Inamed terminated the 1993 Agreement before it received an infringement letter from Dr. Kuzmak, its asserted ... cause of action still arises out of or relates to Dr. Kuzmak's prior negotiation efforts which ultimately culminated in the parties' license agreement. The remaining causes of action seeking declaratory judgment of patent noninfringement sufficiently arise out of the same set of operative facts to vest the district court with pendent personal jurisdiction over those causes of action. [citations omitted].

*Inamed*, 249 F.3d at 1362.

Similarly, this court finds that Compass' claims both for breach of contract and infringement arose from or are related to Pinnacle's activities directed at this forum. Both of Pinnacle's claims arise from Pinnacle's decision to no longer comply with the terms of the license agreement, and its subsequent action in that regard. Pinnacle declined to account for sales or to make further payments under the agreement. It sent written notice to Compass of its

position challenging the validity of one patent, and its contention that it was not infringing the other. The relatedness of the claims to the activities appears clear.

Upon a finding that the first two factors are satisfied, the burden shifts to the defendant to present a compelling case that the exercise of personal jurisdiction is unfair. *Akro Corp.*, 45 F.3d at 1545–46. Pinnacle has failed to come forward with other considerations which would tip the balance in its favor. The court concludes that its actions in seeking out the license and then challenging not only its obligations under that agreement, but also the validity and scope of the patents, make it reasonable that it be required to answer the claims against it in this forum.

Pinnacle states that venue is improper because the court lacks jurisdiction over it. It does not, however, seeks a change of venue in the event personal jurisdiction were to be found. Venue is proper in any district where personal jurisdiction over a corporate defendant may be obtained. *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574 (Fed.Cir.1990), *cert. denied*, 499 U.S. 922, 111 S.Ct. 1315, 113 L.Ed.2d 248 (1991). There is therefore no basis for dismissal on venue grounds.

For the reasons set forth herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the defendant, Pinnacle Equipment, Inc., to dismiss (DN 2) is **DENIED**.