# United States Court of Appeals for the Federal Circuit

2008-1279

SYNTHES (U.S.A.),

Plaintiff-Appellant,

v.

G.M. DOS REIS JR. IND. COM. DE EQUIP. MEDICO
(also known as GMReis),

Defendant-Appellee.


Jeffrey M. Olson, Sidley Austin LLP, of Los Angeles, California, argued for plaintiff-appellant. With him on the brief were Robert A. Holland, Sean A. Commons, and Matthew S. Jorgenson.

Matthew C. Lapple, Covington & Burling LLP, of San Diego, California, argued for defendant-appellee. Of counsel was John M. Benassi, Heller Ehrman LLP, of San Diego, California.

Appealed from: United States District Court for the Southern District of California

Judge M. James Lorenz

# United States Court of Appeals for the Federal Circuit

2008-1279


SYNTHES (U.S.A.),

Plaintiff-Appellant,

v.

G.M. DOS REIS JR. IND. COM. DE EQUIP. MEDICO
(also known as GMReis),

Defendant-Appellee.


Appeal from the United States District Court for the Southern District of California in case no. 07-CV-309, Judge M. James Lorenz.

_____

DECIDED:  April 17, 2009

_____


Before SCHALL, FRIEDMAN, and BRYSON, <u>Circuit Judges</u>.

SCHALL, <u>Circuit Judge</u>.

Synthes (U.S.A.) ("Synthes") appeals the final judgment of the United States District Court for the Southern District of California dismissing without prejudice its suit for patent infringement against G.M. dos Reis Jr. Ind. Com de Equip. Medico ("GMReis").  <u>Synthes (U.S.A.) v. G.M. dos Reis Jr. Ind. Com. de Equip. Medico</u>, No. 07-CV-309-L(AJB), 2008 WL 789925 (S.D. Cal. Mar. 21, 2008).  The court dismissed Synthes's suit after it determined that it lacked personal jurisdiction over GMReis.  For the reasons set forth in this opinion, we hold that the district court does have personal

jurisdiction over GMReis. We therefore reverse the court's judgment and remand the case to the court for further proceedings.

## BACKGROUND

### I.

Synthes is a global medical-device company, with its principal place of business in Pennsylvania. It develops, produces, and markets instruments and implants, including bone plates, for the surgical fixation, correction, and regeneration of the human skeleton. Synthes is the assignee of United States Patent No. 7,128,744 ("the '744 patent"), which is directed to "a bone plating system and method for fracture fixation of bone." '744 patent, Abstract (filed Sept. 22, 2003). GMReis is a Brazilian corporation, with its headquarters in that country. It designs, manufactures, and markets orthopedic and neurological medical devices, including bone plates.

From February 14–16, 2007, the Chief Executive Officer of GMReis, Geraldo Marins dos Reis, Jr., and a GMReis employee, Jose Luis Landa Lecumberri, represented GMReis at the 2007 American Association of Orthopaedic Surgeons Annual Meeting ("AAOS Meeting" or "AAOS trade show") in San Diego, California. At GMReis's booth, Mr. dos Reis and Mr. Lecumberri displayed, among other things, samples of five locking bone plates.[1]

At the AAOS trade show, Synthes served Mr. dos Reis and Mr. Lecumberri with a summons and complaint. The complaint consisted of a single count: "GMReis has been and still is making, using, offering for sale, and/or importing into the United States

---

[1] Locking bone plates are implantable devices with "locking holes" that accommodate "locking screws," which secure bone to plate at a fixed angular relationship. See, e.g., '744 patent, Abstract. They are used to immobilize bones or bone fragments to promote healing of fractures. Id.

products, systems, and/or apparatuses that infringe the '744 Patent, all in violation of 35 U.S.C. § 271." (Compl. 2, ¶ 12.) Section 271 provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a) (2006).

Synthes pleaded that GMReis was subject to personal jurisdiction in the Southern District of California because it had "imported into the United States and/or offered to sell locking plates that infringe Synthes' patent rights [and had] displayed said locking plates at the 2007 [AAOS] Annual Meeting in San Diego, California for the purpose of generating interest in infringing products to the commercial detriment of [Synthes]." (Compl. 1, ¶ 1.) Synthes alleged that, as a result of GMReis's activities, it suffered and continued to suffer damages, including "impairment of the value of the '744 Patent." (Compl. 3, ¶ 13.) Synthes requested that the district court enter judgment that GMReis infringed the '744 patent and that it enjoin GMReis from infringing activity. (Compl. 3, ¶ 1–2.)

On April 6, 2007, GMReis moved to dismiss Synthes's complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). In its memorandum accompanying the motion to dismiss, GMReis admitted that it attended the 2007 AAOS Meeting as part of its international sales effort. It contended, however, that it was not subject to general personal jurisdiction in California because it did not have "continuous and systematic" contacts with California. It also contended that it was not subject to specific personal jurisdiction because it had not performed any act that would constitute patent infringement. Specifically, GMReis asserted that it never made any offer for sale of the

accused product in the United States, and that bringing a product into the United States for display at a trade show does not constitute an infringing act of importation under 35 U.S.C. § 271(a).

In support of its motion to dismiss, GMReis submitted declarations by Mr. dos Reis and Mr. Lecumberri. According to Mr. dos Reis's declaration, GMReis is a Brazilian company without offices, employees, or assets in California or in the United States. The company sells its products in Brazil, South America, Europe, and Asia. GMReis has never sold any of its products in California, but has completed one sale of its products in the United States. That sale was to a veterinary medical supply company located in Massachusetts. Id. GMReis products are not approved by the Food and Drug Administration ("FDA") for use by, or sale to, humans in the United States. Id.

In their declarations, Mr. dos Reis and Mr. Lecumberri admitted attending the 2007 AAOS Meeting to display GMReis's products, five of which were sample locking bone plates. They both asserted that GMReis sends representatives to the AAOS Meeting because many non-U.S. surgeons attend the annual trade show, and GMReis wants to show its products to those non-U.S. surgeons. On February 12, 2007, Mr. Lecumberri traveled with the five samples in his luggage on a flight from Brazil, which landed in the United States in Dallas, Texas, where he went through U.S. Customs. Subsequently, he boarded a flight from Dallas to San Diego.

Mr. dos Reis and Mr. Lecumberri further declared that, at the 2007 AAOS Meeting, they did not sell any of the five sample locking bone plates or use them for the purposes for which they were designed (i.e., in surgery for securing a fractured bone). Because GMReis did not have, and had not applied for, FDA approval of its locking

2008-1279                                      4

bone plates, Mr. dos Reis displayed prominent signs and product literature stating that GMReis products were not approved by the FDA and were not for sale in the United States. The GMReis product literature did not list any price for the locking bone plates, and neither Mr. dos Reis nor Mr. Lecumberri discussed prices at the trade show. Attached to Mr. dos Reis's declaration were photographs from the 2007 AAOS Meeting, showing GMReis's display table, signs, and product literature. Both declarations indicated that Mr. dos Reis returned to Brazil with the sample locking bone plates in his luggage on February 19, 2007.

In response to GMReis's motion to dismiss, Synthes requested depositions of Mr. dos Reis and Mr. Lecumberri, a Rule 30(b)(6) deposition of GMReis,[2] and the production of documents relating to GMReis's contacts, not just with California, but with the entire United States. GMReis opposed the discovery, and specifically objected to Synthes's document requests as overbroad, in that they sought information beyond GMReis's contacts with California.

On May 17, 2007, Synthes filed a motion to compel jurisdictional discovery. In its memorandum accompanying the motion, Synthes argued that in federal question cases involving a foreign defendant, contacts with the United States as a whole may be analyzed under the Due Process Clause of the Fifth Amendment pursuant to Fed. R. Civ. P. 4(k)(2), the so-called federal long-arm statute. Rule 4(k)(2) provides:

---

[2] Rule 30(b)(6) provides for a deposition of an organization named as a deponent. Fed. R. Civ. P. 30(b)(6). The named organization must designate one or more officers, directors, or managing agents, or other persons who consent, to testify on its behalf. Id.

>   (2)   Federal Claim Outside State-Court Jurisdiction.
>   For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
>   (A)   the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>
>   (B)   exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2). Rule 4(k)(1)(A), on the other hand, provides "[i]n [g]eneral" that "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A).

On August 2, 2007, a magistrate judge granted Synthes's motion to compel jurisdictional discovery relating to GMReis's contacts with the United States for purposes of Rule 4(k)(2). See Synthes v. G.M. Reis Jr. Ind. Com. de Equip. Medico, No. 07-CV-0309-L(AJB), 2007 WL 2238900, at *6 (S.D. Cal. Aug. 2, 2007).

From jurisdictional discovery, Synthes learned that GMReis had exhibited its products at a minimum of seven trade shows in the United States since 2003, including the 2006 North American Spine Society trade show, the 2003 World Spine II trade show, and the 2003–2007 AAOS annual meetings. In addition, Mr. dos Reis admitted that he attended at least two other trade shows in the United States. Synthes also learned about GMReis's product acquisition and development in the United States. In the past, GMReis has purchased in the United States parts and a manufacturing machine for use in Brazil. In addition, it regularly purchases a product in the United States for resale in Brazil, and its representatives have met and consulted with two American companies regarding potential purchase and development of components for non-accused products.

Synthes also learned through discovery that, following the 2007 AAOS Meeting, GMReis's website received two inquiries from U.S. entities, asking whether certain GMReis products would be available for sale or would be the subject of clinical trials for FDA approval in the United States in the future. GMReis responded by email that its products were neither approved by the FDA nor available to the U.S. market, and that it did not intend to launch its products in the United States in the future.

II.

As noted above, the district court granted Synthes's motion to dismiss GMReis's complaint for lack of personal jurisdiction. Synthes, 2008 WL 789925, at *1. The court first addressed whether, for purposes of its personal jurisdictional analysis, it should consider GMReis's contacts with California or with the United States as a whole pursuant to Rule 4(k)(2). Id. at *3. Noting that neither the parties nor the court had found a Federal Circuit case applying Rule 4(k)(2), the court looked to Ninth Circuit case law. Id. According to Holland America Line Inc. v. Wärtsilä North America, Inc., 485 F.3d 450, 461 (9th Cir. 2007), a court may exercise jurisdiction over a foreign defendant under Rule 4(k)(2) when three requirements are met: (1) the claim against the defendant must arise under federal law; (2) the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction; and (3) the federal court's exercise of personal jurisdiction must comport with due process. Synthes, 2008 WL 789925, at *1. If Rule 4(k)(2) supplies the due process analysis, then the forum is the United States, and not California. Id. at *4 (quoting Holland Am. Line, 485 F.3d at 462).

The district court found that the first requirement for application of Rule 4(k)(2) was met because Synthes's patent claim undisputedly arises under federal law. Id. at

*3. As to the second requirement, the court looked to the following statement in Holland America Line, 485 F.3d at 461: "If . . . the defendant contends that he cannot be sued in the forum state and refuses to identify any other [state] where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." Synthes, 2008 WL 789925, at *3. (quotation marks omitted). Since GMReis argued it was not subject to personal jurisdiction in any forum in the United States, the court reasoned that the second requirement was met. Id. To determine if the third requirement was met, the court performed a due process analysis considering contacts between GMReis and the nation as a whole pursuant to Rule 4(k)(2). Id. at *4. The court considered the nation as the forum for its analysis of both general and specific jurisdiction. Id. at *3.

The court first considered whether GMReis's contacts with the United States subjected it to general jurisdiction. Id. at *4. Although it was unclear to the court whether Synthes intended to assert a general jurisdiction argument, it found that "GMReis' contacts with the United States [were] no more continuous and systematic than the contacts found to be insufficient in Helicopteros Nacionales de Colombia, S.A. v. Hall," 466 U.S. 408, 416 (1984). The court therefore held that the level of contact between GMReis and the United States was not sufficiently substantial and "continuous and systematic" to justify the exercise of general jurisdiction. Synthes, 2008 WL 789925, at *4.

The court next considered whether GMReis's contacts with the United States subjected it to specific jurisdiction. Id. In that regard, the court applied our three-pronged test for specific jurisdiction, which asks whether (1) the defendant purposefully directed its activities at residents of the forum; (2) the claim arises out of or relates to

the defendant's activities with the forum; and (3) assertion of personal jurisdiction is reasonable and fair. Id. (quoting Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1350 (Fed. Cir. 2003)).

The court determined that GMReis's contacts with the United States satisfied the first prong of the minimum contacts analysis. Id. at *5. The court reasoned that GMReis purposefully directed its activities toward residents of the United States based upon (i) its single sale of products to the veterinary medical supply company, (ii) its several past and current purchases in the United States, and (iii) the pair of consultations exploring supplier and product development options, which took place in the United States. Id. The court noted in its recitation of the facts that Synthes did not contend that any of these contacts in the United States involved the allegedly infringing locking bone plates. Id. at *1.

The court concluded, however, that GMReis's contacts with the United States did not satisfy the second prong of the minimum contacts analysis. Id. at *5. The court identified GMReis's activities at the 2007 AAOS Meeting as the only contacts that arose out of or were related to Synthes's cause of action—the patent infringement claim. Id. The court found that those activities were not purposefully directed at U.S. residents because GMReis's products lacked FDA approval, and GMReis "expressly discouraged the forum residents from purchasing its products." Id. at *4.

Thus, the district court held that Synthes failed "to make a prima facie showing that GMReis's minimum contacts with the United States were sufficient to establish specific personal jurisdiction." Id. at *5. The court did not reach the reasonableness prong of the specific jurisdiction test because the quality and quantity of GMReis's

contacts with the United States failed to establish general or specific personal jurisdiction over GMReis. Id. The court also did not consider whether GMReis's activities in the United States were sufficient for patent infringement because jurisdiction, and "not liability for patent infringement," was at issue. Id. (quoting Genetic Implant Sys., Inc. v. Core-Vent Corp., 123 F.3d 1455, 1458 (Fed. Cir. 1997)). Based upon its decision, the court dismissed Synthes's suit without prejudice and entered judgment accordingly.

DISCUSSION

I.

We have jurisdiction over Synthes's appeal pursuant to 28 U.S.C. § 1295(a)(1). Whether the district court had personal jurisdiction over GMReis is a question we review de novo. 3d Sys., Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1376 (Fed. Cir. 1998). At the same time, we review personal jurisdiction issues in a patent infringement case under Federal Circuit law. Pennington Seed, Inc. v. Produce Exch. No. 299, 457 F.3d 1334, 1338 (Fed. Cir. 2006); see also Beverly Hills Fan Co v. Royal Sovereign Corp., 21 F.3d 1558, 1564 (Fed. Cir. 1994) (applying Federal Circuit law, rather than regional circuit law, where the personal jurisdiction inquiry is "intimately related to substantive patent laws").

Because the district court resolved the personal jurisdictional question based on the submission of papers, Synthes bore the burden of making a prima facie showing that the court had personal jurisdiction over GMReis. See Elecs. for Imaging, 340 F.3d at 1349 ("[W]here the district court's disposition as to the personal jurisdiction question is based on affidavits and other written materials in the absence of an evidentiary

2008-1279                                     10

hearing, a plaintiff need only to make a prima facie showing that defendants are subject to personal jurisdiction."). When deciding whether to grant or deny GMReis's motion to dismiss, the district court was required "to accept the uncontroverted allegations in [Synthes's] complaint as true and resolve any factual conflicts in [Synthes's] favor." Id.

Synthes contends that the district court erred in holding that it failed to establish a prima facie basis for personal jurisdiction over GMReis. Synthes argues that GMReis is subject to personal jurisdiction because GMReis has engaged in commercial activities within the United States that violated the importing, using, or offering to sell prohibitions of 35 U.S.C. § 271(a). Specifically, Synthes contends that GMReis imported infringing products into the United States when its representatives brought the sample locking bone plates to the 2007 AAOS Meeting from Brazil, and that GMReis used and offered to sell infringing products when it displayed and promoted the locking bone plates at the 2007 AAOS Meeting. Synthes further contends that the court erred in its finding that GMReis's trade show activity was not directed at U.S. residents.

For its part, GMReis maintains that we should affirm the district court's dismissal because the district court correctly concluded that GMReis was not subject to general or specific personal jurisdiction. GMReis argues that it never imported, used, or offered for sale allegedly infringing bone plates within the meaning of 35 U.S.C. § 271(a). As a result, GMReis argues, it cannot fairly be said that it purposefully directed its activities at residents of the United States. It also argues that the acts of bringing sample locking bone plates into the United States and displaying them at a trade show, without identifying a price for them, did not constitute an import, use, or offer to sell. According to GMReis, its extensive efforts to avoid affecting the U.S. market negated any potential

finding of purposeful availment.  Finally, GMReis contends that it would be unfair and unjust, and inconsistent with due process, to subject it to personal jurisdiction.

II.

Rule 4 is the starting point for any personal jurisdictional analysis in federal court. See generally Fed. R. Civ. P. 4; see also Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987) ("[S]ervice of process in a federal action is covered generally by Rule 4 of the Federal Rules of Civil Procedure.").  As a preliminary matter, we must decide whether the district court properly considered GMReis's contacts with the United States as a whole under a Rule 4(k)(2) personal jurisdictional analysis.  As mentioned above, personal jurisdictional issues in patent infringement cases are reviewed under Federal Circuit law, not regional circuit law.  See Pennington Seed, 457 F.3d at 1338; Beverly Hills Fan, 21 F.3d at 1564–65.  We therefore supply our own analysis as to whether Rule 4(k)(2) applies in this case.

As noted by the district court, see Synthes, 2008 WL 789925, at *3, we have not yet had occasion to analyze the applicability of Rule 4(k)(2).  The rule, entitled "Federal Claim Outside State-Court Jurisdiction," states, in relevant part:  "For a claim that arises under federal law, serving a summons . . . establishes personal jurisdiction over a defendant if:  (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws."  Fed. R. Civ. P. 4(k)(2).  Similar to other circuits and the district court in this case, we read Rule 4(k)(2) to allow a court to exercise personal jurisdiction over a defendant if (1) the plaintiff's claim arises under federal law, (2) the defendant is

not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process.[3]

Determining whether a plaintiff's claim arises under federal law generally presents a relatively straightforward analysis, and in this case it is undisputed that Synthes's claim arises under federal law. However, determining the second Rule 4(k)(2) requirement—that the defendant not be subject to personal jurisdiction in any state's courts of general jurisdiction (the "negation requirement")—poses practical difficulties for a district court. Ordinarily, the plaintiff bears the burden of proof as to whether the defendant is subject to personal jurisdiction. See 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1068.1 (3d ed. 1988). Thus, under the second Rule 4(k)(2) requirement, the plaintiff's burden would be to prove that the defendant is not subject to jurisdiction in any of the fifty states. Proving the lack of personal jurisdiction in every state could be quite onerous, especially since the defendant, and not the plaintiff, oftentimes possesses the necessary information to do so. See United States v. Swiss Am. Bank, Ltd., 191 F.3d 30, 40–41 (1st Cir. 1999). However, assigning the burden to the defendant forces the defendant to "choose between conceding its potential amenability to suit in federal court or conceding amenability to suit in some identified state court." Id. at 41.

To address these concerns, the First Circuit has tailored a burden shifting mechanism, where a

---

[3]     See e.g., Porina v. Marward Shipping Co., 521 F.3d 122, 127 (2d Cir. 2008); Holland Am. Line, 485 F.3d at 461; Cent. States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 940–41 (7th Cir. 2000); United States v. Swiss Am. Bank, Ltd., 191 F.3d 30, 38 (1st Cir. 1999).

plaintiff . . . must certify that, based on the information that is readily available to the plaintiff and his counsel, the defendant is not subject to suit in the courts of general jurisdiction of any state. If the plaintiff makes out his prima facie case, the burden shifts to the defendant to produce evidence which, if credited, would show either that one or more specific states exist in which it would be subject to suit or that its contacts with the United States are constitutionally insufficient.

Id. Under the First Circuit approach, the plaintiff must certify that the defendant is not subject to suit in the courts of general jurisdiction of any state—a requirement that presents practical difficulties for a plaintiff who prefers to plead in the alternative that the defendant is subject to suit under a state's long-arm statute.

The Fourth Circuit has seemingly adopted the First Circuit's approach. See Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory", 283 F.3d 208, 215 (4th Cir. 2002). The Fourth Circuit, however, only engages in a Rule 4(k)(2) analysis if the state's long-arm statute fails to authorize the court's exercise of personal jurisdiction over the defendant. See CFA Inst. v. Inst. of Chartered Fin. Analysis of India, 551 F.3d 285, 292 (4th Cir. 2009) ("If the state's long-arm statute fails to authorize the court's exercise of personal jurisdiction, we must then—and only then—decide whether Rule 4(k)(2) is satisfied."). By analyzing personal jurisdiction under the state's long-arm statute first, the Fourth Circuit allows the plaintiff to argue in the alternative that a court may exercise jurisdiction under a Rule 4(k)(1) or 4(k)(2) analysis. The First, Sixth, and Eleventh Circuits also appear to conduct a personal jurisdictional analysis under the state's long-arm statute before proceeding to a Rule 4(k)(2) analysis.[4]

---

[4] See Oldfield v. Pueblo de Bahia Lora, S.A., No. 07-11958, 2009 WL 330935, at *4 n.22 (11th Cir. Feb. 12, 2009) (determining that the defendant lacked sufficient contacts with Florida to satisfy its long-arm statute before conducting a Rule 4(k)(2) analysis); Fortis Corp. Ins. v. Viken Ship Mgmt., 450 F.3d 214, 218 (6th Cir. 2006) ("Because specific personal jurisdiction exists in this case based on defendants'

The Fifth, Ninth, and D.C. Circuits have adopted a variation of the First Circuit's approach, which was first articulated by the Seventh Circuit:

> A defendant who wants to preclude the use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. Naming a more appropriate state would amount to a consent to personal jurisdiction there. . . . If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other state where suit is possible, then the federal court is entitled to use Rule 4(k)(2). This procedure makes it unnecessary to traipse through the 50 states, asking whether each could entertain the suit.

ISI Int'l, Inc. v. Borden Ladner Gervais LLP, 256 F.3d 548, 552 (7th Cir. 2001) (citations omitted); see also Holland Am. Line, 485 F.3d at 461; Mwani v. bin Laden, 417 F.3d 1, 11 (D.C. Cir. 2005); Adams v. Unione Mediterranea Di Sicurta, 364 F.3d 646, 651 (5th Cir. 2004). Under this approach, the court is entitled to use Rule 4(k)(2) unless the defendant names a state where suit could proceed.

Finally, another approach is to conduct a due process analysis prior to a negation requirement analysis. Under this approach, if it is concluded that the defendant's contacts do not satisfy due process, it is not necessary to determine whether the requirements for application of Rule 4(k)(2) are met.[5]

The third requirement under Rule 4(k)(2)—the due process analysis— contemplates a defendant's contacts with the entire United States, as opposed to the

---

contacts with Ohio, we do not address the requirements for general jurisdiction and the 'national contacts' test."); Swiss Am. Bank, 191 F.3d at 37 (analyzing personal jurisdiction under relevant state long-arm statute before proceeding to Rule 4(k)(2) analysis).

[5] See, e.g., Porina, 521 F.3d at 127 n.6 ("Given our conclusion on the due process issue, we do not find it necessary to decide whether the second requirement for Rule 4(k)(2) jurisdiction is met."); BP Chems. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 259 (3d Cir. 2000) (deciding that the defendant's contacts were not sufficient to warrant the district court's assertion of personal jurisdiction and never reaching the other two requirements of Rule 4(k)(2)).

state in which the district court sits. See Fed. R. Civ. P. 4(k)(2) advisory committee notes to 1993 amendment (explaining that the Fifth Amendment, the basis of jurisdiction under Rule 4(k)(2), "requires that any defendant have affiliating contacts with the United States sufficient to justify the exercise of personal jurisdiction over that party"). Rule 4(k)(2) was adopted to ensure that federal claims will have a U.S. forum if sufficient national contacts exist. See id. ("[Rule 4(k)(2)] authorizes the exercise of territorial jurisdiction over the person of any defendant against whom is made a claim under any federal law if that person is subject to personal jurisdiction in no state."). The rule closes a loophole that existed prior to the 1993 amendments to the Federal Rules, as explained by the advisory committee notes to Rule 4(k)(2):

> Under the former rule, a problem was presented when the defendant was a non-resident of the United States having contacts with the United States sufficient to justify the application of United States law and to satisfy federal standards of forum selection, but having insufficient contact with any single state to support jurisdiction under state longarm legislation or meet the requirements of the Fourteenth Amendment limitation on state court territorial jurisdiction. In such cases, the defendant was shielded from the enforcement of federal law by the fortuity of a favorable limitation on the power of state courts, which was incorporated into the federal practice by the former rule. In this respect, the revision responds to the suggestion of the Supreme Court made in Omni Capital Int'l v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 111 (1987).[6]

---

[6] In Omni Capital International, the Supreme Court held that the district court could not "exercise personal jurisdiction over [the defendants] because they [were] not amenable to service of summons in the absence of a statute or rule authorizing such service." 484 U.S. at 103. The Court noted, but did not address, whether, under the plaintiff's theory, "a federal court could exercise personal jurisdiction, consistent with the Fifth Amendment, based on an aggregation of the defendant's contacts with the Nation as a whole, rather than on its contacts with the State in which the federal court sits." Id. n.5.

Id. Rule 4(k)(2), therefore, serves as a federal long-arm statute, which allows a district court to exercise personal jurisdiction over a foreign defendant whose contacts with the United States, but not with the forum state, satisfy due process.

## III.

We turn now to this case. As seen, the district court concluded that Rule 4(k)(2) governed its personal jurisdictional analysis because Synthes's claim of patent infringement presents a federal question, and because GMReis asserted that it was not subject to the jurisdiction of any U.S. forum. For our part, we see no reason to take a different approach. As to the first Rule 4(k)(2) requirement, we agree with the district court and the parties that Synthes's patent infringement claim arises under federal law. See 28 U.S.C. § 1338 (2006). As to the second Rule 4(k)(2) requirement, neither Synthes nor GMReis disputes the district court's acceptance of GMReis's contention that it is not subject to personal jurisdiction in any forum in the United States. Under these circumstances, we will apply a due process analysis under Rule 4(k)(2) and consider GMReis's contacts with the nation as a whole. We leave for another day a determination as to (i) whether the plaintiff or defendant bears the burden of fulfilling the second requirement of Rule 4(k)(2), (ii) what sort of showing satisfies that burden, and (iii) whether the district court, in the first instance, must undergo a Rule 4(k)(1) analysis before engaging in a Rule 4(k)(2) analysis.

"[D]ue process requires only that in order to subject a defendant to a judgment in personam, [the defendant must] have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting

Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  In order for there to be minimum contacts, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [ ], thus invoking the benefits and protections of its laws."  Hanson v. Denckla, 357 U.S. 235, 253 (1958). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts . . . ."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quotation marks omitted).

Depending on their nature and number, a defendant's contacts with a forum can provide a court with general jurisdiction or specific jurisdiction.  To be subject to general jurisdiction, a defendant business entity must maintain "continuous and systematic general business contacts" with the forum, even when the cause of action has no relation to those contacts.  Helicopteros Nacionales, 466 U.S. at 416.  "Neither the United States Supreme Court nor this court has outlined a specific test to follow when analyzing whether a defendant's activities within a [forum] are 'continuous and systematic.'"  LSI Indus. Inc. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1375 (Fed. Cir. 2000).

We have, however, outlined a three-factor test for specific jurisdiction, which considers whether (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to the defendant's activities with the forum, and (3) assertion of personal jurisdiction is reasonable and fair.  Elecs. for Imaging, 340 F.3d at 1350; see also Burger King, 471 U.S. at 472–73 (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984), and Helicopteros Nacionales, 466 U.S. at 414).  Under this test, a court may properly assert specific jurisdiction, even if

2008-1279                                    18

the contacts are isolated and sporadic, so long as the cause of action arises out of or relates to those contacts.  Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1200 (Fed. Cir. 2003).  Indeed, a "substantial connection" with a forum arising out of a "single act can support jurisdiction."  Burger King, 471 U.S. at 475 n.18 (citing McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)).

Turning to the facts of this case, we think the district court was correct in ruling that it did not have general jurisdiction over GMReis.  Synthes, 2008 WL 789925, at *4.  GMReis's contacts with the United States include attendance at trade shows, purchases of parts and a machine, the sale of a product for a veterinary application to one customer, and a pair of consultations about product development.  In our view, these contacts with the United States do not constitute "continuous and systematic general business contacts," which would confer a court with general jurisdiction under Helicopteros Nacionales, 466 U.S. at 415–16.  Indeed, on appeal, Synthes does not contest the district court's general jurisdiction ruling.

We think the district court erred, however, in its ruling that it lacked specific jurisdiction over GMReis.  Applying the first factor of our three-factor test for specific jurisdiction, we conclude that GMReis purposefully directed its activities at parties in the United States.  The following undisputed facts support this conclusion.  On behalf of GMReis, Mr. Lecumberri brought locking bone plates into the United States from Brazil.  As representatives of GMReis, Mr. dos Reis and Mr. Lecumberri displayed those items at the GMReis booth at the 2007 AAOS Meeting in San Diego, California.  In addition, in their declarations, Mr. dos Reis and Mr. Lecumberri admitted that they attended the AAOS Meeting because GMReis wanted to display its products to attendees of the

trade show. In fact, in its motion to dismiss, GMReis noted that its participation in the 2007 AAOS Meeting was part of its international sales effort. Together, these deliberate contacts support a finding that GMReis purposefully availed itself of the United States.

As for the second factor, Synthes's claim of patent infringement arises out of GMReis's activities in the United States. Synthes's complaint alleges that GMReis has been, and still is, making, using, offering for sale, selling, and/or importing into the United States products, systems, and/or apparatuses that infringe the '744 patent, all in violation of 35 U.S.C. § 271(a). Synthes states in the complaint that GMReis is subject to personal jurisdiction because GMReis directly and through agents imported into the United States, and/or offered to sell, locking plates that infringe Synthes's '744 patent. Synthes also states that GMReis displayed the locking plates at the 2007 AAOS Meeting for the purpose of generating interest in infringing products, to the commercial detriment of Synthes. Synthes's claim of patent infringement, therefore, arises directly out of GMReis's bringing the locking bone plates into the United States, displaying them at the 2007 AAOS Meeting in San Diego, and trying to generate interest in GMReis products among attendees of the trade show.

We respectfully disagree with the district court's conclusion that GMReis did not purposefully direct its activities at U.S. residents because "GMReis expressly discouraged the forum residents from purchasing its products." Synthes, 2008 WL 789925, at *4. We acknowledge, as the district court did, that "Synthes does not dispute that GMReis did not have FDA approval for sale or use of its products in the United States, that its trade show displays and brochures prominently disclosed that fact[,] or that its intent was to attract interest from potential foreign purchasers and not

purchasers from the United States." Id. However, while these facts do tend to show that GMReis's <u>sales</u> efforts were purposefully not directed at U.S. residents, they do not change the undisputed facts that GMReis purposefully directed its travel with the sample locking bone plates to the United States and then displayed those products at a trade show in the United States attended by U.S. residents. GMReis was present in the United States through two of its employees (including its Chief Executive Officer), both of whom conducted company business at the trade show.

We see no reason to address, as both parties urge, whether Synthes made a prima facie showing that GMReis's activities in the United States constituted patent infringement under 35 U.S.C. § 271(a). As noted by the district court, personal jurisdiction, not liability for patent infringement, is at issue here. Id. at *5 (quoting <u>Genetic Implant</u>, 123 F.3d at 1458). In short, the sole question before us is whether exercising jurisdiction over GMReis comports with due process.[7] Therefore, we express no view as to whether Synthes has made a prima facie showing of importation, offer to sell, or use within the meaning of § 271(a).

Because we find that GMReis's activities within the United States were sufficient to establish minimum contacts, we turn to a consideration of whether assertion of

---

[7]    In <u>Medical Solutions, Inc. v. C Change Surgical LLC</u>, 541 F.3d 1136, 1139–40 (Fed. Cir. 2008), we were called upon to determine whether the plaintiff had made a prima facie showing that the defendant had violated 35 U.S.C. § 271(a). We had to address this question because, in asserting personal jurisdiction over the defendant, the plaintiff relied on the District of Columbia's long-arm statute, which renders personal jurisdiction proper over a non-resident defendant who "caus[es] tortious injury in the District of Columbia by an act or omission in the District of Columbia." The "tortious injury" requirement is not present in this case. The reason is that our sole inquiry is whether GMReis has sufficient minimum contacts with the United States so that the exercise of personal jurisdiction under Rule 4(k)(2) comports with due process.

jurisdiction over GMReis is reasonable and fair. To determine whether exercising personal jurisdiction would comport with "fair play and substantial justice," we consider five factors: (1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive social policies. Burger King, 471 U.S. at 477 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)). These factors may serve to "establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than otherwise would be required," but they may also establish a "compelling case" that would "render jurisdiction unreasonable" despite the presence of minimum contacts. Id.

We conclude that application of the five factors establishes that exercising personal jurisdiction in this case is both reasonable and fair. The burden on GMReis is significant, in that GMReis will be required to traverse the distance between its headquarters in Brazil and the district court in California, and will be required to submit itself to a foreign nation's judicial system. See Asahi Metal Indus. Co. v. Cal. App. Dep't Super. Ct., 480 U.S. 102, 114 (1987). We note, however, that "progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome." World-Wide Volkswagen, 444 U.S. at 294 (quoting Hanson, 357 U.S. at 251) (quotation marks omitted). In addition, for at least the last five years, GMReis representatives have traveled to the United States for, among other things,

trade shows, which suggests that, as far as GMReis is concerned, travel itself is not unduly burdensome.

Moreover, we think that any burden on GMReis is sufficiently outweighed by the interest of the United States in adjudicating the dispute and the interest of Synthes in obtaining effective and convenient relief, the second and third due process factors. The United States has a "substantial interest" in enforcing the federal patent laws. <u>See</u> <u>Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.</u>, 297 F.3d 1343, 1356 (Fed. Cir. 2002). The United States also has an interest in discouraging injuries that occur within its boundaries, including injuries resulting from patent infringement. <u>See</u> <u>Beverly Hills Fan</u>, 21 F.3d at 1568. In this case, the extent of the injury resulting from the alleged patent infringement in the United States is unclear. Synthes claims that GMReis has imported allegedly infringing locking bone plates into the United States in violation of 35 U.S.C. § 271(a), and that the value of the '744 patent is diminished by GMReis's use of the United States as a platform for its commercial activities. GMReis counters, however, that the dispute between Synthes and GMReis amounts to only $105—the value of the five GMReis locking bone plates displayed at the 2007 AAOS Meeting. While we express no view as to Synthes's likelihood of success on the merits, we are not prepared to say that Synthes has failed to allege an injury for which it has an interest in obtaining relief. In short, we conclude that Synthes has an interest in obtaining a judgment of infringement and injunctive relief.

To the extent that the fourth and fifth due process factors apply when the United States is the forum, we think they favor jurisdiction in this case. Both factors are concerned with the potential clash of substantive social policies between competing fora

and the efficiency of a resolution to the controversy.  <u>Burger King</u>, 471 U.S. at 477.  As far as the fourth factor is concerned, here the forum is the United States, so no other U.S. forum is available to Synthes for its patent infringement claim.  Put another way, there is no U.S. forum with which to compare the efficiency of a resolution or with respect to which there is a clash of social policies.  If we look to the procedural and substantive interests of other nations, we have no reason to believe that "the Federal Government's interest in its foreign relations policies" with Brazil will be hindered by allowing the district court to exercise personal jurisdiction over GMReis.  <u>See</u> <u>Asahi Metal Indus.</u>, 480 U.S. at 115.

As to the fifth due process factor, GMReis argues that the forum, the United States, has an interest in furthering the social policy favoring the exchange of technological ideas and business.  We agree that the United States has an interest in not chilling trade show attendance by foreign inventors, entrepreneurs, and customers.  However, we do not view our decision as barring convention center doors to foreign entities.  Interested parties, foreign and domestic, are welcome to attend trade shows in the United States, set up booths, and discuss their products.  If, however, as in this case, a party brings allegedly infringing products to a trade show, we do not see the Due Process Clause of the Fifth Amendment standing in the way of a district court's exercise of jurisdiction over the party.

In sum, this is not "one of those rare cases in which 'minimum requirements inherent in the concept of "fair play and substantial justice" . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities.'"  <u>Asahi Metal Indus.</u>, 480 U.S. at 116 (Brennan, J., concurring in part

and concurring in judgment) (quoting <u>Burger King</u>, 471 U.S. at 477–78)).  Accordingly, we hold that subjecting GMReis to the jurisdiction of the district court is both reasonable and fair.

CONCLUSION

For the foregoing reasons, we reverse the judgment of the district court dismissing Synthes's complaint for lack of personal jurisdiction.  The case is remanded to the district court for further proceedings.

COSTS

Each party shall bear its own costs.

<u>REVERSED</u> and <u>REMANDED</u>.