NEWMAN, Circuit Judge,
dissenting.
The Federal Circuit again restricts United States parties from access to our courts when a United States patent is owned by a foreign entity. The court rules that the foreign patent owner is not subject to suit in California despite its commercial presence in California including the grant of at least ten patent licenses to companies in California; despite a manufacturing venture of the patent owner with a California-based company to produce and sell microarrays designed by the patent owner; despite participation by the patent owner with respect to the patented technology in trade shows and scientific meetings in California; and despite the patent owner’s threats of infringement against Autogenomics, a California company whose accused activities are conducted in California. On the entirety of these contacts, jurisdiction of this declaratory judgment action was proper in the Central District of California. From my colleagues’ contrary ruling, I respectfully dissent.
DISCUSSION
It is not disputed that there is a “case of actual controversy” in accordance with the Declaratory Judgment Act, 28 U.S.C. § 2201(a), between the patent owner Oxford Gene Technology Inc., a British company, and the plaintiff Autogenomics. The only question is whether the requirements of personal jurisdiction have been met in California, the resident forum of Autogenomics, recognizing that Oxford is not registered to do business in any of the United States.
Wdiere a foreign defendant has not consented to suit in a forum, the inquiry into personal jurisdiction turns on a trio of criteria, generally designated as purposeful availment, relatedness, and reasonableness. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); Akro Corp. v. Luker, 45 F.3d 1541, 1545 (Fed.Cir.1995). First, the defendant must have purposefully availed itself of the forum by conducting activities in the forum. Second, the plaintiffs claim must arise from or be related to the defendant’s activities in the forum. And third, the court’s exercise of personal jurisdiction must comport with the principles of due process and fairness.
Autogenomics readily made a prima facie showing as to these criteria, for Oxford owns several United States patents, including the patent that is the subject of this declaratory action, and is exercising its United States patent rights through approximately ten licensees in California. Autogenomics states that Oxford has entered into a manufacturing venture with the California company Agilent, whereby Agilent serves as a California-based supplier of microarrays designed by Oxford. Oxford’s employees have personally exhibited the Oxford technology at trade shows in California and publicized the availability of licenses for Oxford’s United States patents. The record shows sale of Oxford microarray products to at least one customer in California. Oxford employees *1025 traveled to California and negotiated with Autogenomics in that forum. In addition, California is the primary site of Autogenomies’ -business, the forum in which the accused infringing activities are conducted, and in which Oxford’s threatened enforcement of its patent would occur. Many of Oxford’s contacts with California relate directly to the '270 patent, the subject of this lawsuit.
The reasonableness inquiry applies to both defendant and plaintiff, invoking “notions of fair play and substantial justice,” Akro, 45 F.3d at 1546, as measured by factors such as those discussed in Burger King:
[Cjourts in appropriate cases may evaluate the burden on the defendant, the forum State’s interest in adjudicating the dispute, the plaintiffs interest in obtaining convenient and effective relief, the interstate judicial system’s interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.
471 U.S. at 477, 105 S.Ct. 2174 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)) (quotation marks omitted). Considerations of reasonableness give effect to the equitable authority of courts to provide access to adjudication when such is warranted, while protecting both sides from unfair burdens. Considerations of fairness and justice are central to the due process analysis, the Court observing that “[tjhese considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required.” Burger King, 471 U.S. at 477, 105 S.Ct. 2174 (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 780, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); Calder v. Jones, 465 U.S. 783, 788-89, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); McGee v. International Life Ins. Co., 355 U.S. 220, 223-24, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)).
Autogenomics brought this declaratory judgment action in the forum of its corporate residence and principal place of business, the location of the activities that Oxford says infringe its United States patents. The compulsory counterclaim of infringement would center oh activities in the Central District of California. No other forum has been asserted by Oxford to be more convenient; indeed, the entire relationship between Oxford and Autogenomics has been in the California forum, which is a primary locus of the biotechnology ihdustry in which both parties are engaged. All of these factors are relevant to the inquiry of whether “the quality and nature of the activity in relation to the fair and orderly administration of the laws” is sufficient for a forum to exercise jurisdiction. International Shoe Co. v. Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945).
Personal jurisdiction of owners of United States patents has been recognized in circumstances no closer to the forum than those here. In Campbell Pet Co. v. Miale, 542 F.3d 879 (Fed.Cir.2008), this court held that the patentee, a corporation having a California residence, was nonetheless subject to.personal jurisdiction in the state of Washington, upon having attended a trade show in Washington and complained about the plaintiffs display, then writing to the plaintiff in Washington, charging infringement. Id. at 886. In Viam Corp. v. Iowa Export-Import Trading Co., 84 F.3d 424 (Fed.Cir.1996), this court held that the Central District of California had personal jurisdiction of the Italian corporation SPAL, which owned a United States patent. SPAL had no United States residence, although it had an exclusive distributor resident in Iowa, and its only activity *1026 involving California was the importation and sale of the patented goods in California by its distributor; but this court held: “There is sufficient connection between [the non-resident patent owner’s and its distributor’s] activity and the litigation to satisfy [the minimum contacts] prong of the International Shoe Due Process test.” Id. at 429. This court determined that the foreign patentee “ha[d] ‘purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.’ ” Id. at 428 (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). The court also observed that “allowing the forum to exercise jurisdiction cannot be said to be unfair.” Id. at 430.
The comparison with Viam is informative, for both Oxford and SPAL are foreign owners of United States patents who do business in the forum without themselves residing in the forum. In Oxford’s case its patented inventions are placed in United States commerce through manufacture by United States licensees, providing a more direct connection with United States commerce than the importation of products manufactured offshore. Oxford’s contacts with the California forum are not “random, fortuitous, or attenuated,” Burger King, 471 U.S. at 475, 105 S.Ct. 2174 (internal quotation marks omitted), but are the normal course of Oxford’s business of exploiting and profiting from its United States patents.
Today’s ruling is also, incompatible with this court’s recent decision in Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico, 563 F.3d 1285 (Fed.Cir. 2009). Synthes involved a patent infringement suit filed by a United States plaintiff against a Brazilian entity whose products were offered for sale at trade shows in the United States, although no actual sales of the allegedly infringing products were made in the United States. The Brazilian company had no office or subsidiary or licensee in the United States, although it purchased United States products for use or resale in Brazil. This court applied Federal Rule of Civil Procedure 4(h)(2),[1] the “federal long-arm statute,” and held that the entire United States is an available forum. 563 F.3d at 1290. The court considered the entirety of the contacts, and found them sufficient to establish specific personal jurisdiction over the Brazilian defendant. Id. at 1292. The court stressed that the Brazilian company’s attendance at trade shows in the United States included display of an allegedly infringing product. Id. at 1292. My colleagues assert that Synthes is not relevant merely because the foreign party was the accused infringer, rather than the patentee. See maj. op. at 1020-21 n. 1. But this court has previously recognized that this is not a valid means of distinguishing cases, for Viam relied on the stream of commerce to establish personal jurisdiction, see Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1566 (Fed.Cir. 1994), although the foreign defendant in Beverly Hills Fan was the accused infringer rather than the patentee. See Viam, 84 F.3d at 428 (“All the reasons for adopting and applying the stream of commerce theory to the question of personal jurisdiction *1027 over an out-of-state alleged infringer as defendant, fully explored in Beverly Hills Fan, are equally applicable to the same question regarding an out-of-state patentee as defendant.”).
On considering the interests of both sides to this dispute, in light of precedent, it has not been shown that subjecting-Oxford to suit in California is either unreasonable or unfair. My colleagués on this panel hold that the California forum has neither general nor specific jurisdiction over Oxford, although the Central District of California is the forum most directly related to Oxford’s activities in the United States, as well as being the locus of the accused infringement. Nonetheless, this court immunizes Oxford, the owner of a United States patent, from resolution of the patent dispute. This court has recognized that “[j]ust as a state has a substantial interest in preventing patent infringement within its borders, it also has a substantial interest in protecting its residents from claims of patent infringement that may be unwarranted.” Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found., 297 F.3d 1343, 1356 (Fed.Cir.2002).
Depriving Autogenomics of the opportunity to resolve the threat of infringement is contrary to the purpose and principles of the Declaratory Judgment Act. See Medlmmune, Inc. v. Genentech, Inc., 549 U.S. 118, 128-32,127 S.Ct. 764, 166 L.Ed.2d 604 (2007) (explaining that public policy favors declaratory challenge to adverse patents by persons whose substantial rights may be affected).
My colleagues on this panel, in support of their ruling that Oxford cannot be sued in California, cite this court’s recent holding in Avocent Huntsville Corp. v. Aten International Co., 552 F.3d 1324, 1335 (Fed.Cir.2008). However, if Avocent is read to bar this suit, it is in conflict with precedent of this court and the Supreme Court, as discussed therein. See id. at 1341-51 (Newman, J., dissenting). Viam held that the foreign patent owner’s sales (through a distributor) in the forum sufficed to support personal jurisdiction, while Avocent ruled that such sales are irrelevant to personal jurisdiction. This direct conflict simply adds confusion; however, this court remains bound by the “rule -of interpanel accord,” which is that in the event of conflict, real or perceived, the earlier decision controls until the conflict is resolved. See, e.g., Newell Cos. v. Kenney Mfg. Co., 864 F.2d 757, 765 (Fed.Cir.1988).
The panel majority also cites the statement in Red Wing Shoe Inc. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355 (Fed.Cir.1998), that “[principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in the foreign forum,” id. at 1360 — 61, principles with which I fully agree. However, while the Red Wing court made this statement to explain why personal jurisdiction does not arise from infringement letters, the court.seems to have confused personal jurisdiction with the showing of a “case or controversy” that is needed to establish subject matter jurisdiction for a declaratory judgment action. Whether accusations of infringement are actionable in a specific case has no relation to where suit may be brought when a case or controversy does indeed exist, as in this case.
The evolving law under Medlmmune facilitates challenge to adversely held patents. See, e.g., SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1380 (Fed.Cir.2007) (“The Supreme Court’s opinion in Medlmmune represents a rejection of our reasonable apprehension of suit test.”). The court’s ruling today negates this development, by unduly narrowing personal jurisdiction to bar an action that *1028 the Court has advised should be available under the Declaratory Judgment Act. Although undoubtedly there are circumstances in which a foreign patent owner can properly avoid jurisdiction, here the foreign patentee is actively and forcefully using its United States patents in a competitive context within the forum of this suit. Equity favors the reasonableness of permitting Autogenomics to resolve the threat, instead of continuing to face the uncertainty of liability and business risk, at the whim of the patent owner.
This is not a trivial question. The PTO reports that 50.3% of the patents granted in 2008 were issued to foreign patentees. See USPTO, Extended Year Set—Historic Patents By Country, State, and Year—All Patent Types (December 2008), available at http://www.uspto.gov/web/offices/ac/ido/ oeip/tafi’cst_allh.htm. Thus restriction on the availability of declaratory judgment actions against foreign-owned patents is of economic significance. As this court stated in Viam, it cannot have been contemplated that activities otherwise subject to federal jurisdiction, are always immunized from adjudication when the patent owner’s address is offshore. 84 F.3d at 429-30. The panel majority asserts that, at a minimum, the United States District Court for the District of Columbia remains a fallback forum, see 35 U.S.C. § 293. It is surely useful that the District of Columbia court can have jurisdiction “to take any action respecting the patent or rights thereunder.” Id. That is not the issue herein, nor does § 293 override personal jurisdiction in a more suitable and convenient forum. See Deprenyl Animal Health, 297 F.3d at 1353 (section 293 “represents an important Congressional judgment that in exchange for obtaining the benefits of a United States patent, it is appropriate to require foreign patentees to submit to broader jurisdiction in United States Federal Court than that to which they would otherwise be subject.”). It is not explained why a California plaintiff should have to resort to a distant forum, which is not alleged to have meaningful contacts with either party, to resolve a dispute that centers upon actions by both the plaintiff and the foreign patentee in the state of California. I take note that Oxford has not suggested transfer to the District of Columbia; the Oxford position is that it cannot be sued.
The court’s decision that Oxford cannot be brought before the court in the Central District of California is contrary to law, precedent, and policy. I respectfully dissent.

. Rule 4(k)(2) states:
(2) Federal Claim Outside State-Court Jurisdiction
For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
(B) exercising jurisdiction is consistent with the United States Constitution and laws.