Dissenting opinion filed by Circuit Judge PROST.
PROST, Circuit Judge,
dissenting.
I agree with the majority’s discussion of Rule 4(k)(l)(A) and its treatment of the first two requirements for personal jurisdiction to be proper under Rule 4(k)(2). I also agree that the Appellees have minimum contacts with the United States as a whole and that Touchcom’s cause of action arises out of those contacts. However, in my view, this case presents one of the “rare situations” in which minimum contacts are present but exercising personal jurisdiction would nevertheless violate due process because “the plaintiffs interest and the state’s interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum.” Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1568 (Fed.Cir.1994). I therefore respectfully dissent.
As the majority notes, a court cannot exercise jurisdiction if doing so “would offend traditional notions of fair play and substantial justice.” Asahi Metal Indus. Co. v. Super. Ct. of Cal., 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (quotation marks omitted). In determining whether the assertion of jurisdiction over a defendant is reasonable, we consider five factors: (1) the burden on the defendant, (2) the forum’s interest in adjudicating the dispute, (3) the plaintiffs interest in obtaining convenient and effective relief, (4) the interstate judicial system’s interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive social policies. Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico, 563 F.3d 1285, 1299 (Fed.Cir.2009) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). We must also be mindful of the Supreme Court’s admonition that “[gjreat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.” Asahi, 480 U.S. at 115, 107 S.Ct. 1026 (quoting United States v. First Nat’l City Bank, 379 U.S. 378, 404, 85 S.Ct. 528, 13 L.Ed.2d 365 (1965) (Harlan, J., dissenting)).
With respect to the first factor, the majority concludes that the burden on the Appellees in this case is “minimal” because modern transportation and communication technologies make travel between Toronto, Ontario and Alexandria, Virginia less burdensome than it has been in the past. See Majority Op. at 1417-18 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 294, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), and Synthes, 563 F.3d at 1299). Additionally, the majority suggests that the Appellees, who are residents of Canada, have some familiarity with the United States legal system by virtue of their status as patent agents who are eligible to practice before the United States Patent and Trademark Office (“USPTO”). I respectfully disagree that subjecting the Appellees to suit in the United States is a “minimal” burden.
*1420 Traveling the approximately 500 miles from the Appellees’ office near Toronto to Alexandria is no doubt manageable as a logistical matter. Nevertheless, “[i]t goes without saying that ‘[additional distance [from home] means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which [the] fact witnesses must be away from their regular employment.’ ” In re TS Tech USA Corp., 551 F.3d 1315, 1320 (Fed.Cir.2008) (quoting In re Volkswagen AG, 371 F.3d 201, 205 (5th Cir.2004)) (second and third alterations in original).
Additionally, the burden on the Appellees is not merely the travel time. For example, I do not think we would assume that it is less burdensome for a resident of Buffalo, New York to litigate in Toronto rather than New York City even though Toronto is over 250 miles closer. Regardless of the ease of travel, “[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.” Asahi 480 U.S. at 114, 107 S.Ct. 1026.
I also disagree with the majority’s assertion that the Appellees’ eligibility to practice before the USPTO gives them a special familiarity with United States law. Under the applicable rules, an applicant for registration before the USPTO need not demonstrate any general understanding of our country’s legal system. See 37 C.F.R. §§ 11.6(c), 11.7(a). Moreover, the majority identifies no basis for its conclusion that the knowledge and skills necessary to prosecute patents before a government agency would tend to provide familiarity with malpractice litigation before a jury in a trial court.
Admittedly, the task of quantifying the burden on a particular defendant in a particular case and formulating a linguistic description of that burden is not amenable to precision. See, e.g., Asahi, 480 U.S. at 114, 107 S.Ct. 1026 (litigating in California was a “severe” burden for Japanese defendant); Synthes, 563 F.3d at 1299 (litigating in California was a “significant” burden for Brazilian defendant); Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found., 297 F.3d 1343, 1356 (Fed.Cir.2002) (defendant’s status as a Canadian corporation was “not insignificant,” but the burden of subjecting it to litigation in Kansas was “relatively minimal”); Johnston v. Multidata Sys. Int’l Corp., 523 F.3d 602, 617 (5th Cir.2008) (litigating in Texas was a “severe” burden for Canadian defendant); Benton v. Cameco Corp., 375 F.3d 1070, 1079 (10th Cir.2004) (litigating in Colorado was a “significant” burden for a Canadian corporation). However, it is sufficient to resolve this case to recognize that it will be fairly burdensome for the Canadian Appellees to hire foreign lawyers to defend them in a trial before foreign jurors in a foreign court that will be governed by foreign procedural rules and, potentially, other more substantive foreign laws. See, e.g., Majority Op. at 1418 (suggesting that Virginia choice-of-law rules might be applied). This is so because even if these burdens are not viewed as overwhelming, they nevertheless outweigh the competing interests in having the case decided in the United States.
With respect to the second factor in the analysis, I consider the United States’ interest in adjudicating this dispute to be minimal. Most importantly, neither Touchcom nor the Appellees are citizens or residents of the United States. See Asahi 480 U.S. at 114, 107 S.Ct. 1026 (“Because the plaintiff is not a California resident, California’s legitimate interests in the dispute have considerably diminished.”). *1421 Moreover, as foreign patent agents, the Appellees are not permitted to represent United States citizens before the USPTO. 37 C.F.R. § 11.6(c). Thus, the United States can claim no interest in protecting its own citizens from negligent representation before the USPTO.
As a general matter, the majority is correct that “the United States has an interest in regulating malpractice occurring at the USPTO regardless of the nationalities involved.” Majority Op. at 21. However, the due process analysis must be conducted on a case-by-case basis. See Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 445, 72 S.Ct. 413, 96 L.Ed. 485 (1952). In this case, the alleged malpractice consists of the Appellees’ act of submitting a patent application to the USPTO that could not result in the issuance of a valid patent because it lacked the source code necessary to satisfy the definiteness requirement of 35 U.S.C. § 112. In my view, the United States’ interest in discouraging this type of negligence by omission is adequately protected by the USPTO’s authority to reject claims that suffer from this type of defect. See Manual of Patent Examining Procedure § 2181 (8th ed., July 2008 rev.). Additionally, USPTO regulations provide for discipline of attorneys who do not represent their clients competently. See 37 C.F.R. §§ 10.20, 10.77, 11.19. While it is regrettable that the USPTO issued an invalid patent to Touchcom, opening our courts to this lawsuit will contribute little to the United States’ existing ability to encourage patent attorneys and agents to submit proper applications to the USPTO.
Turning to the third factor, I agree with the majority that Touchcom’s interest in obtaining relief in a United States court is minimal because a Canadian forum is available. Accordingly, I do not believe that this factor supports the exercise of personal jurisdiction in this case.
The majority notes that the fourth and fifth factors — the interstate judicial system’s interest in obtaining the most efficient resolution of controversies and the shared interest of the states in furthering fundamental substantive social policies— “are concerned with the potential clash of substantive social policies between competing fora and the efficiency of a resolution to the controversy.” Majority Op. at 1418 (quoting Synthes, 563 F.3d at 1300). In the majority’s view, these factors did not favor either party.
With respect to the fourth factor, the majority concludes that the United States and Canada would be equally efficient fora because the suit would likely implicate at least some of the laws of each nation. I generally agree, subject to the observation that leaving the adjudication of malpractice claims between foreign parties to the fora in which they both reside would spread the demand on judicial resources more evenly across the globe rather than centralizing it in the United States.
Finally, I believe that the interest of the fora in furthering fundamental substantive social policies counsels against our exercise of jurisdiction. It is true that the United States has a policy interest in regulating foreign patent agents who appear before the USPTO. However, as discussed above, the exercise of jurisdiction in this case would only marginally further that interest. The United States’ interest must be balanced against Canada’s interest in this dispute, which I submit is more significant. First, as the majority recognizes, Canada has an interest in regulating contracts entered into between Canadian citizens. Second, the magnitude and availability of damages for professional malpractice will affect the quality and price— and, accordingly, accessibility — of professional services. Balancing the competing policy considerations can be controversial *1422 and is best left to the forum in which the services are sought and provided.
In sum, it is my view that a weighing of the factors identified by the Supreme Court demonstrates that exercising jurisdiction over the Appellees in this case is unreasonable. Accordingly, I respectfully dissent.